SMITH WALLER, plaintiff in error, vs. ALEXANDER PERKINS et al., defendants in error.

(TRIPPE, J., having been of counsel, did not preside in this case.)

1. Under sections 496 and 497 of the Code, it is competent for the ordinary of a county, even without the recommendation of the grand jury, to levy a county tax to erect, or keep in repair the county buildings, and to furnish safes, furniture, etc.   And this power includes the power to levy a tax to pay any debt that may have been contracted for such purposes of erection, repair, etc.   This power is in the discretion of the ordinary, subject to the supervision of the judge of the superior court by *mandamus* or injunction, as prescribed by section 503 of the Code.

Waller vs. Perkins et al.

2. Besides this tax for the erection and repair of county buildings, the ordinary may, under section 509 of·the Code, if the grand jury fail or refuse to act, levy a tax (not to exceed fifty per cent. on the state tax), sufficient to pay the necessary county expenses, and any debts that may be in judgment against the county, or which the county may have been ordered to pay under a *mandamus*, and within this limit of fifty per cent. on the state tax, a creditor who has a judgment, or in whose favor there is a *mandamus*, may compel the laying of the tax.

3. The tax of twelve and one-half per cent. allowed by the act of 1818, for the·support of the indigent poor is independent of the county tax proper, and is not included with the fifty per cent. limit of section 509 of the Code, or the one hundred per cent. limit of section 515 of the Code. And this is also true of the tax for poor school purposes as provided by sections 1201 and 1202 of the Code, which said sections are still of force, so far as to authorize a tax to pay debts for poor school purposes contracted before the passage of the general education law.

4. When debts against a county (other than debts for public buildings and their repairs,) accumulate so that the fifty per cent. allowed by sections 509 and 511 will not be sufficient to pay them, the grand jury may recommend a tax for county purposes as high as one hundred per ·cent. upon the state tax, and if this amount, or the amount allowed ·by local law, will not pay the necessary current expenses and the ac-·cumulated debt, the creditors have a right to require that at least twenty-five per cent. of the debt shall be paid therefrom.

5. It is within the power of the legislature to provide for the organization of county commissioners for the county, and in so doing it may provide that they may be chosen by the grand jury of the county.

6. If commissioners are provided for by law, and they enter upon the duties of their office, they are officers *de facto*, and though there be irregularity in the time or manner of their election, their acts are not, for that reason, illegal and void.

County matters. Tax. County commissioners. Officers. Election. Injunction. Before Judge HALL. Monroe County. At chambers. March 7th, 1873.

Alexander Perkins and others, filed their bill against Smith Waller, the tax collector of Monroe county, making, in brief, the following case:

Complainants are tax-payers of Monroe county, owning property therein to the amount of about $100,000 00. Prior to the year 1872, said county had contracted an alleged indebtedness amounting to $23,541 16. Of this amount

Waller *vs.* Perkins *et al.*

$20,415 02 constituted no binding obligation upon the county, as it was in the shape of change-bills, for the issue of which there was no authority of law, and for scrip, etc., paid to W. L. Lampkin and Benier Pye for usury, discount and various charges made by them for keeping said change-bills at par. On August 27th, 1872, the general assembly passed an act creating a board of county commissioners of roads, public buildings, public property and finances for the county of Monroe, which provided that the selection of said commissioners should be by the grand jury, subject to the approval of the judge at the next regular term of Monroe superior court, after the passage of said act. The August term of Monroe superior court was then in session, and in violation of the provisions of said act, and without any authority of law, the grand jury of that term selected three commissioners, two of them being from their own body. One or more of these pretended commissioners were not regular jurors, but were summoned by the sheriff, who was largely interested in claims against the county, from another jury list, to be conveniently near as talesmen. One of the commissioners thus illegally selected has failed to qualify, and all the action had by said pretended board, as hereinafter referred to, was by the other two, and as complainants submit, therefore invalid.

The current expenses of the county do not exceed $8,000 per annum. The indebtedness to the county, consisting principally of balances due by county officers, amounts to $19,-620 58, to collect which no effort has been made. On October 15th, 1872, said pretended board of commissioners ordered that a tax of two hundred per cent. on the state tax be assessed on the property in Monroe county, and be levied for the year 1872, for the following purposes:

Building jail and repairing court-house, past due ... ... ... 65 per cent.
For poor school funds, past due ... ... ... ... ... ... ... ... ... 7 per cent.
Expenses for poor house ... ... ... ... ... ... ... ... ... ... ... ... 7 per cent.
Building and repairing bridges ... ... ... ... ... ... ... ... ... ... 10 per cent.
To pay coroner ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... 1 per cent.
To pay sheriffs, jailors and other officers out of the county 15 per cent.
To pay jurors ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... 20 per cent.

Waller *vs.* Perkins *et al.*

To pay expenses of the county for bailiffs at courts, non-resident witnesses in criminal cases, fuel, servants' hire, stationery, and the like ... ... ... ... ... ... ... ... ... ... ... 3 per cent.
Indebtedness of the county for 1872 ... ... ... ... ... ... ... 22 per cent.
To pay accumulated debt of the county ... ..., ... ... ... ... 50 per cent.

Complainants admit that the grand jury, at the February term, 1872, of Monroe Superior Court, did "recommend a levy of one hundred per cent. on the state tax for county purposes, and a levy sufficient to raise the sum of $20,000 00," but they charge that neither the county treasurer nor the ordinary had submitted to said body any financial statement of the pecuniary condition, or of the wants of the county, or what levies were called for to discharge the several classes of debts.

Complainants say that the defendant is about to enforce the collection of the tax assessed by the pretended commissioners, amounting to the enormous sum of two hundred per cent. on the state tax, by the levy upon and sale of their property; that said tax is manifestly illegal. Prayer that the collection of the same be enjoined.

The answer makes no material change in the case made by the bill as above reported.

Affidavits were introduced showing that the expense of building the jail, of repairing the court-house in the years 1869 and 1870, of purchasing and fitting up the poor house, had all been paid for in the county change-bills prior to the year 1872. Also the presentment of the grand jury of August term, 1872, unanimously recommending that a sufficient county tax be levied to raise the sum of $20,000 00, as they regarded it as especially desirable to pay the county debt, and to place the county again in a sound financial condition.

The chancellor sanctioned the bill, and ordered the writ of injunction to issue as prayed for, except as to the following items of taxation:

Building and repairing bridges ... ... ... ... ... ... ... ... 10 per cent.
Extra pay for county officers ... ... ... ... ... ... ... ... ... 15 per cent.
To pay jurors ... ... ... ... ... ... ... ... ... ... ... ... ... 20 per cent.

| | |
|---|---|
| Other court expenses, such as bailiffs, stationery, and servant hire ... ... ... ... ... ... ... ... ... ... ... ... ... ... | 3 per cent. |
| County indebtedness for 1872 ... ... ... ... ... ... ... ... ... | 22 per cent. |
| Making a total of ... ... ... ... ... ... ... ... ... ... ... | 70 per cent. |

To this judgment the defendant excepted.

LANIER & ANDERSON; J. S. PINCKARD, for plaintiff in error.

PEEPLES & HOWELL, for defendants.

McCAY, Judge.

1. It is very difficult, perhaps impossible, to say exactly what was the true intent of the framers of the Code on some of the leading points made by this record. As to the taxes necessary to build and repair the public buildings of the county, such as the court-house, jails, etc., it is very plain, from sections 496, 497 and 503 of the Code, that the ordinary acts in his discretion, subject only to the control of the judge of the superior court, by proceeding, formally instituted, charging abuse. It seems to us to follow, as a matter of course, that this discretion, limited, as we have said, must extend also to taxes to pay a debt contracted for these purposes. The object of leaving the ordinary uncontrolled in these cases is, that the necessity for a new jail or new court-house, etc., may arise at any time. Fire, or storm, or accident may, in a day, sweep either of them away. And it seems to have been thought important that a sure means should always be at the command of the ordinary to replace them; and it seems to us just as important that the ordinary should not be hampered or limited in his power to raise money to pay a debt or meet a contract, for these purposes, as to raise the money before the work is done.

2. It is clear, too, that the ordinary may, if the grand jury fail or refuse to recommend as provided by section 509, levy a tax, without any recommendation, to meet the necessary county expenses, and to pay any debts in judgment, or for

Waller *vs.* Perkins *et al.*

which there is a *mandamus*. By the terms of section 511 there is no limit upon the extent to which the ordinary may go. The language is broad : "The necessary current expenses, and any debts in judgment, or for the payment of which there is a *mandamus*." It would seem, by the letter of this section, that if these necessary expenses, judgments, etc., are large, that a tax may be laid to meet them, though it may take two hundred per cent., or, indeed, any rate. And if the grand jury fail to recommend a sufficient rate, it is the duty of the ordinary to lay a sufficient rate, whatever that may be. But in view of the long established practice of this state, as indicated by its previous laws upon this subject, and in view of the first section of this chapter, (section 509,) we think this broad grant of power in section 511 is to be limited to fifty per cent. on the state tax. There would seem to be no sense in the limitation of section 509 to fifty per cent., if, in the very next section, so broad a power was intended to be given.

3. The tax for the support of the indigent poor, authorized by the act of 1818, has never needed the recommendation of the grand jury. It always has been at the discretion of the inferior court or ordinary. And this is true of the school tax allowed by sections 1201 and 1202 of the old Code. There is nothing indicating a necessity for a recommendation. Indeed, up to twenty-five per cent., it would seem the intent was expressly to declare it might be without a recommendation. It is not necessary to decide here whether these sections are still of force. It is held by many that they are, that there is nothing in the new school law to repeal them, either by express words or by implication. It appears, however, that the tax laid in this case is to pay a debt incurred before the general common school law was passed. For such a purpose, it is clear to us the act is of force. The teachers have earned their money under this law, and we think they have a right to have it enforced. Indeed, it might well be questioned if it would have been competent for the legislature, as against these teachers, to repeal this law.

4. As *we* read section 515 of the Code the real difficulty is

Waller *vs.* Perkins *et al.*

to put *any limit* to the power of the county authorities to lay taxes for the payment of debts really due. Its letter would seem to indicate that at least twenty-five per cent. of all accumulated debts must be paid every year, without any limitation as to the per cent. on the state tax it may take to do this. But in view of long established practice and usage of the legislature to limit the taxing power of the counties, even with the assent of the grand jury, we are of the opinion that the limitation of one hundred per cent. in this section (515,) is a limit on the grand jury itself. That fifty per cent. may be laid, as provided in section 511, and with the recommendation of the grand jury, it is competent, for the purposes of section 515, to go as high as one hundred per cent.

5. The constitution of 1868 expressly authorizes the legislature to provide for the creation of county commissioners in such counties as may require them, and to define their duties. There is no limit on this power. Nor does the constitution point out how these officers shall be chosen. It leaves the whole matter to the discretion of the legislature. In other words, the people have not seen fit to restrict themselves as to the mode of the choice of such officers. Under article 3, section 3, paragraph 1, the legislature has, in terms, the power to make all laws consistent with this constitution. We think it would be a stretch of the judicial functions to attempt to control the legislature in this matter. The most that can be said is that the selection of such officers by the grand jury is against the genius of the government, which is, in all its essential features, democratic. But this is a very loose ground to go upon, and does not, in our judgment, authorize us to say that it is not competent for the general assembly to leave the election of these officers to the grand jury. There is nothing in article 9, section 1, of the constitution, interfering with this view. That section only refers to sheriffs, clerks, etc., and to such county officers as then existed by law.

6. As this is a legal office, and, under the forms of law, the officers were in the exercise of their duties, we do not think it is competent to attack their acts on the ground of the ille-

gality or informality of their election.   They were officers *de facto*, and their acts as such are not void : Code, sec. 129 ; 44 *Georgia*, 454.

Judgment reversed.