## CLOUD *et al. v.* COUNTY OF TALIAFERRO.

Under the contract between the client and attorneys, and the admitted facts, the court erred in making the rule absolute against the attorneys. MAY 17, 1912.

Rule. Before Judge Walker. Taliaferro superior court. March 13, 1911.

*John C. Hart,* for plaintiffs in error. *W. H. Fleming,* contra.

EVANS, P. J. The railroad of the Georgia Railroad and Banking Company, a domestic corporation, traverses the County of Taliaferro. It claimed a charter exemption from taxation of its physical properties. The proper authorities of Taliaferro County entered into the following contract with attorneys for the collection of these taxes: "Georgia, Taliaferro County. This contract made this August 1, 1905, between the Board of Commissioners of Roads and Revenues of said county, of the first part, and Samuel H. Sibley, J. A. Beazley, and Hawes Cloud, all of said county, of the second part, witnesseth, that said parties of the first part have this day employed said parties of the second part as attorneys at law to collect for said county any and all taxes to which said county may be entitled from the Ga. R. R. and Banking Co. or the lessees of said Railroad as back taxes, or in any way due said county, and agree to pay said parties of the second part 20% of the amount collected on the general claim for taxes, and 25% of the amount collected in proceedings especially against the Washington Branch of said Railroad; said attorneys to have no claim for said fees except on the amount which they may collect, being hereby authorized to proceed in such way as may seem best to them." The attorneys collected the taxes, principal and interest,

for the years 1896 to 1909 inclusive, and claimed commissions on the entire sum collected. The county denied the right of the attorneys to reserve commissions for taxes to become due subsequently to the date of the contract. A rule was brought against the attorneys, and under the stipulation of facts between the parties it was made absolute. The attorneys bring error.

The divergent contentions of the parties result from the construction given to the contract wherein the county authorities employed attorneys to collect certain taxes from the railroad company. The county's contention is that the attorneys were employed to collect only the taxes which were due at the time of the execution of the contract. The attorneys contend that their employment extended to the establishment of the railroad company's liability to taxation, and the collection of all taxes anterior to the time that liability was legally established. The county authorities lay great stress on a literal interpretation of the contract, which they insist is plain and unambiguous that the only taxes the attorneys were engaged to collect were "back taxes" or taxes "in any way due said county" at the time of the contract, and insist that there is no language in the contract which would include taxes which would become "back taxes" at a future date. On the contrary the attorneys insist, that the language of the contract is to be interpreted in the light of its subject-matter and circumstances; that at the time the contract was made the railroad company, which for many years had operated a railroad through the county, had never paid any tax on its physical property within the county, claiming a charter exemption; and that the intention of the parties was to establish the taxability of the property and collect the taxes up to that time for the stipulated commission. "Courts, in the construction of contracts," says the Supreme Court of the United States, "look to the language employed, the subject-matter, and the surrounding circumstances; and may avail themselves of the same light which the parties enjoyed when the contract was executed. They are accordingly entitled to place themselves in the same situation as the parties who made the contract, in order that they may view the circumstances as those parties viewed them, and so judge of the meaning of the words and of the correct application of the language to the things described." Nash v. Towne, 5 Wall. 689. It appears from the facts admitted in the stipulation of the

parties, that the main line, and a branch line (known as the Washington branch), of the Georgia Railroad and Banking Company, a domestic corporation, traversed the county of Taliaferro. The railroad company from its organization had never paid to the County of Taliaferro any tax on its physical properties, when in 1903 the comptroller-general issued a tax execution for taxes claimed to be due the various counties for that year. On January 7, 1904, the railroad company filed its bill in equity in the circuit court of the United States for the northern district of Georgia, to enjoin the collection of the taxes demanded for the year 1903, on the ground that all of its property was exempted by its charter from taxation, except one half of one per cent. on the net proceeds of the investment, which tax had already been paid. While this suit was pending the County of Taliaferro, through its proper authorities, entered into the contract set out in the statement of facts. In pursuance of their contract the attorneys, on March 16, 1906, intervened in the name of Taliaferro County, and set up the claim of that county to taxes on the main line and also on the Washington branch. In the pleadings hitherto filed no specific differentiation as to the liability to taxation of the main line and the Washington branch was made. The comptroller-general filed a demurrer and answer to the railroad company's bill, and the demurrer was overruled. A writ of error was sued out to the Supreme Court of the United States; and that court, on February 21, 1910, affirmed generally the decree of the circuit court, holding the railroad property exempt from taxation, but reversed it as to the Washington branch, which was decreed to be subject to taxation. Immediately after the decision counsel for the county caused executions to be issued for the years 1896 to 1909, inclusive. The railroad company and counsel for the county agreed upon a settlement, pursuant to which the railroad company paid over to counsel for the county the sum of $14,751.42. Of this sum the principal and interest for the years prior to 1905 amounted to $7,615.41, and for subsequent years the principal and interest amounted to $7,136.01. Upon receiving the sum of $14,751.42 the attorneys deducted 25 per cent. and offered to pay the county the balance. The county authorities, contending that under the contract the attorneys were not entitled to retain any commission on the amount collected for 1905 and subsequent years, declined to accept the

amount, and instituted a rule to require the attorneys to pay over the amount which was claimed by them to be due to the county. Pending the rule the attorneys paid over to the county the amount collected, less 25 per cent., under a stipulation that the payment was not to affect the legal rights of the parties.

It will be seen that at the time of the employment of the attorneys the railroad company disputed all liability for taxes. The laws for the summary enforcement of tax levies are so explicit that counties do not usually employ attorneys to collect their revenue from taxes. Railroad taxes are collected by the comptroller-general, and the employment of special counsel indicates that the county authorities were concerned not so much with the collection of tax for any particular year as to establish the county's right to annually lay a tax upon the physical property of the railroad company. The railroad company was not disputing with the county the sufficiency or propriety of the collecting machinery, or the amount of the tax, or the legality of its levy; it was setting up exemption from taxation. Hence the principal object of any litigation to be instituted by the attorneys, as a means to the collection of a tax, was to establish the right of the county to exact the tax. The pending litigation between the railroad company and the comptroller-general involved only the taxes of one year, and the county authorities were contracting in aid of the comptroller's effort in this direction. The comptroller-general issued a fi. fa. for only one year, when he could have issued and simultaneously pressed the taxes for other years. These circumstances are persuasive that the subject-matter of the contract comprehended primarily the establishment of the taxability of the physical property. When that was established, it followed as a matter of course that unpaid taxes were to be regarded as back taxes to be collected by the attorneys under the contract. After it was settled that the railroad property was taxable, subsequent taxes would be assessed and paid by the railroad company in the ordinary and usual course, or, if the company was delinquent, then payment could be enforced by the usual summary process. But concede that another construction might be put upon the contract; that it was ambiguous. The attorneys acted on their construction of it. They were vigilant and energetic to obtain a decree assuring to their client an annual revenue from taxes to be laid on the railroad's property. They were

successful as to the Washington branch. So soon as the ultimate decision was announced by the Supreme Court, they were prompt to secure to their client the full fruits of their victory. They immediately caused fi. fas. to be issued. Unless fi. fas. were issued, the taxes would not draw interest. *Georgia Railroad Company* v. *Wright,* 125 *Ga.* 589 (54 S. E. 52) ; *McWilliams* v. *Jacobs,* 128 *Ga.* 375 (57 S. E. 509). The settlement with the railroad company was made by the attorneys, and the interest actually collected exceeded the commissions of the attorneys, which are in dispute. The county by bringing the rule against the attorneys recognized that the money in controversy came into the attorney's hands by virtue of the relation of attorney and client between it and the attorneys. It is true that after the decision of the Supreme Court the chairman of the board of commissioners of roads and revenues of Taliaferro County directed the representative of the railroad company to make check for the total amount payable to the county treasurer; but that this direction was ignored and the money was paid over directly to the attorneys. But the fact is patent that the money in controversy represents the taxes, principal and interest, collected by the attorneys under their contract; and the county is contending that, although the whole was collected, they are not entitled to any compensation for collecting that part of the sum representing the taxes, principal and interest, for the years 1905 to 1909, inclusive. The county should not be permitted to accept the fruits of the attorneys' efforts, should not be permitted to demand money collected by the attorneys (thus ratifying their authority to collect), and at the same time deny the attorneys' authority to collect a portion of what was collected. When the county authorities demanded the money of the attorneys, they knew their construction of the contract; they knew that the attorneys claimed to have collected this money pursuant to their contract with the county, and, with this knowledge, they contend that the county may accept the benefits of the attorneys' labor and diligence under the contract, without the burden which the contract imposes. It is contrary to all legal principle that a client may accept the benefits of the acts of his attorney, and at the same time repudiate the authority of the acts which secured them. We think that the attorneys were entitled to their commissions on the full amount collected.            *Judgment reversed. All the Justices concur.*