BOWERS *v.* HANKS, chairman.

1. Neither the counties of this State nor their officers can do any act, make any contract, or incur any liability not authorized by some legislative act applicable thereto.

2. The board of commissioners of roads and revenues of the County of Floyd is without authority to employ a county demonstration agent and to pay his salary out of the funds of said county, there being no statute of this State authorizing such employment and expenditure.

3. Under the constitution of this State the legislature has authority to authorize the counties thereof to employ county demonstration agents and to pay their salaries from funds to be raised by county taxation.

4. The record in this case failing to disclose that the act of 1914, giving to the county board of health full power to adopt all such rules and regulations not inconsistent with the constitutions of this State and of the United States, for the protection of the health of their respective counties, had been recommended by two successive grand juries of Floyd County, and the record further failing to disclose that, if said act had been so recommended and rules and regulations prescribed, such rules and regulations authorize the employment of county demonstration agents, the contract in this case can not be sustained under this act.

No. 2515. FEBRUARY 16, 1922.

Petition for mandamus. Before Judge Wright. Floyd superior court. March 5, 1921.

W. E. Bowers was employed by the board of commissioners of roads and revenues of Floyd County as county demonstration agent of said county for the year 1921, at the salary of $150 per month. As such agent he rendered the services required for the months of January and February, 1921. The clerk of said board issued a warrant for the two months salary due him; but the chairman of the board, upon whom devolved the duty of signing county warrants, refused to sign the same. Thereupon Bowers applied for a mandamus to compel him to sign the warrant issued by the clerk for his salary for the two months. Mandamus nisi issued; and in reply thereto J. D. Hanks, as chairman of said board, demurred to the petition, on the grounds: (*a*) that there was no law authorizing the employment of such agent

and the payment of his salary by the County of Floyd; and (*b*) because such salary could not be constitutionally paid from the funds of said county raised by taxation. In his answer Hanks, as such chairman, set up the same defenses to the mandamus proceedings.

The case was submitted to the trial judge upon the petition, demurrer, and answer; and he refused to make the mandamus absolute. The plaintiff excepted to this judgment.

*L. A. Dean, M. B. Eubanks, Lamar Camp,* and *Cobb & Bell,* for plaintiff. *John W. Maddox,* for defendant.

HINES, J. (After stating the foregoing facts.)

1. Article 2, section 1, paragraph 1, of the constitution of this State declares that " Each county shall be a body corporate, with such powers and limitations as may be prescribed by law." Civil Code, § 6594. Under this provision of our constitution counties possess no powers not conferred upon them either expressly or by fair implication from the statutes applicable to them. When they undertake through their constituted authorities to exercise the power of taxation in any given manner, a clear and manifest legal right to do so must appear. *Maxwell* v. *Cumming,* 58 *Ga.* 384; *Kennedy* v. *Seamans,* 60 *Ga.* 612; *Albany Bottling Works* v.*Watson,* 103 *Ga.* 503 (30 S. E. 270); *Howard* v. *Early County,* 104 *Ga.* 669 (30 S. E. 880); *DeVaughn* v. *Booten,* 146 *Ga.* 836 (92 S. E. 629).

Has the legislature granted to the County of Floyd the authority to employ and pay a county demonstration agent? Our attention has not been called to any statute of this State conferring this power generally upon the counties thereof; but it is insisted that the act creating the board of commissioners of roads and revenues for the County of Floyd confers statutory power upon said board to employ and pay such an agent from the funds of the county raised by public taxation. No such express power is given this board by the act of the legislature creating the same; but it is insisted that this board can exercise, in addition to the specific authority granted in the act of its creation, such other powers as were granted by the then Code of this State to justices of the inferior court. Section 5 of this act declares that " said board of commissioners shall have the same powers in appointing road commissioners and enforcing the road laws· as justices of the in-

ferior court had by the Code of this State prior to the ratification of the late State Constitution, and shall exercise such other powers as are granted by the Code of the State to said justices." Ga. Laws 1871-2, p. 226 et seq. Under the then Code of this State the justices of the inferior court of the several counties had authority, upon the recommendation of the grand jury, to levy a tax upon the State tax, for educational purposes, of such per cent. as said jury may recommend. Code of 1867, § 1281. If the grand jury at the time they should recommend the general county tax failed to take any action in reference to this tax, then such justices might, in their discretion, levy a tax for such purpose, not to exceed twenty-five per cent. upon the State tax. Code of 1867, § 1282. The educational fund of each county was under the management of a board of education consisting of the justices of the inferior court, the ordinary, and some other qualified citizen to be selected by the judge of the superior court presiding in such county. Code of 1867, § 1285. If the board of education failed to devise any plan of education, the laws in force prior to December 13, 1859, were continued in force. Code of 1867, § 1294.

It is insisted that the act creating the board of commissioners of roads and revenues of Floyd County. is preserved by article 12, section 1, paragraph 4, of the constitution of 1877, which provides: " Local and private acts passed for the benefit of counties, cities. towns, corporations, and private persons, not inconsistent with the supreme law, nor with this Constitution, and which have not expired nor been repealed, shall have the force of statute law, subject to judicial decision as to their validity when passed, and to any limitations imposed by their own terms," and that this board can still exercise all the powers with reference to county matters, including educational matters, that the justices of the inferior court possessed. This provision of the constitution gives to this local act the force of statute law, and preserves to this board all powers which the justices of the inferior court had under the Code of 1867. Under this code the justices of the inferior court had authority, upon the recommendation of the grand jury, to levy a tax upon the State tax, for educational purposes, of such per cent. as said jury might recommend; and in case the jury failed to act, then the justices could levy a tax for such

purpose, not to exceed twenty-five per cent. upon the State tax. Code of 1867, §§ 1281, 1282. But this power, possessed by the justices of the inferior court, and given to the board of commissioners of roads and revenues of Floyd County by the act creating it, does not confer upon this board the power to declare what kinds of education shall be provided. The plan and system of county education was to be fixed by the then county board of education, or, on their default in this matter, the plan and system provided by law prior to December 13, 1859, prevailed.

The justices of the inferior court were without power to declare and define educational purposes; but could only levy a tax to carry out such purposes when defined and fixed by the proper authorities. At the date of Irwin's Code the educational system of Georgia consisted of the University of Georgia, the Georgia Military Academy, the Academy for the Blind, the Academy for the Deaf and Dumb, county academies, and common schools. Code of 1867, §§ 1197 et seq. There was a board of education for each county, made up of justices of the inferior court, the ordinary, and some other qualified citizen selected by the judge of the superior court presiding in the county. Code of 1867, § 1285. This board adopted annually the school system. Code of 1867, § 1286. If this board failed to devise any plan of education, the system provided by law prior to December 13, 1859, was continued in force. Code of 1867, § 1294.

So the system of county education was then fixed by the county board of education; and the justices of the inferior court as such did not have the power to adopt the county system of education. As members of the county board the justices of the inferior court in that capacity could have predominant influence. But they exercised this influence, not as justices of the inferior court, but as members of the county board of education.

So the justices of the inferior court were without power to fix the curriculum in the county schools; but when the same was adopted by the county board of education, they could levy the tax for the support of the county schools under the provisions of law above referred to.

Under the present code county taxes can be levied "to pay charges for educational purposes, to be levied only in strict compliance with the law." Civil Code, § 513, par. 8. This provision

does not confer power on the county authorities to levy a school tax *ad libitum*. This provision of law manifestly refers to statutes which authorize the levy, and on which such levy must depend. *Richter* v. *Bacon*, 145 *Ga.* 408 (89 S. E. 367).

The county boards of health now have supervision over all matters relating to health and sanitation in their respective counties, where the operation of the act of August 17, 1914 (Ga. Laws 1914, p. 124), has been recommended by two successive grand juries. In counties where this law has been so adopted the county authorities have full power to adopt, enact, establish, and maintain all such rules and regulations, not inconsistent with the laws and constitutions of this State and of the United States, as they may deem necessary and proper for protecting the health of their respective counties. Civil Code, § 1670. As county demonstration agents have, as we shall hereafter show, much to do with sanitation and health, the county boards of health or the county authorities, after adopting proper rules and regulations, might provide for the employment and pay of these agents (*Townsend* v. *Smith*, 144 *Ga.* 792, 87 S. E. 1039); but this act has not been adopted in Floyd County, so far as the record discloses.

So, in the absence of statutory authority, we reach the conclusion that the board of roads and revenues of Floyd County is without authority to employ and pay a county demonstration agent from the public funds of said county raised by taxation. The contract which the board made with the plaintiff, employing him as such agent, is without authority of law and is null and void.

2. But we are equally clear that the legislature of the State can authorize the counties of this State to levy taxes for the purposes of employing county demonstration agents. Under legislature could only delegate to counties the power to levy a tax poses. Civil Code, § 6562 (Ga. Laws 1910, p. 45).

Under the constitution of 1877, as originally written, the legislature could only delegate to counties the power to levy a tax for " educational purposes in instructing children in the elementary branches of an English education only." The legislature was without authority to authorize the counties to levy a tax for any other educational purpose. Under this provision of the con-

stitution, as amended in 1910 (Ga. Laws 1910, p. 45), the legislature has power to authorize the counties to levy a tax for educational purposes generally. So, if a county demonstration agent is engaged in carrying out an educational purpose, the legislature can authorize the counties to levy a tax for such purpose.

What are the functions of a county demonstration agent? " The Agricultural Extension Work Act " of Congress (38 Stat. 372) was passed " in order to aid in diffusing among the people of the United States useful and practical information on subjects relating to agriculture and home economics, and to encourage the application of the same;" and to this end it was enacted that " there may be inaugurated in connection with the college or colleges in each State now receiving, or which may hereafter receive, the benefits of the act of Congress approved July second, eighteen hundred and sixty-two, entitled ' An act donating public lands to the several States and Territories which may provide colleges for the benefit of agriculture and the mechanic arts, . . agricultural extension work which shall be carried on in cooperation with the United States Department of Agriculture.' " The assent of the General Assembly of Georgia was given to the provisions and requirements of this act of Congress, and the trustees of the University of Georgia were authorized to receive the grants of money appropriated under said act; to organize and conduct agricultural extension work. Ga. Laws 1914, p. 1243.

To carry out this university extension work county demonstration agents are appointed. They are required to make farm surveys, arrive at farm problems and assist in solving them, to conduct demonstrations for adult farmers on the rotation of crops, improvement of the soil, better methods of cultivation and the rational use of fertilizers, to develop the swine industry by the use of better pastures, better bred herds, and by fighting hog cholera, lice, other diseases' and parasites, to enlarge the beef industry by the use of better bred sires and the development of pure bred herds, to assist in improving the farm dairy through the introduction of pure bred sires, the use of balanced rations and the keeping of methodical records, to demonstrate the proper care of the home orchards, home gardens, small fruit and truck crops, to encourage local fairs and clubs for the purpose of securing united effort in developing community enterprises, such as co-

operative creameries, meat-curing houses, methods of controlling boll-weevil, and co-operation in the marketing of farm products, and to co-operate with school superintendents and teachers in the organization of boys' and girls' agricultural club work, and the introduction, use and study of home economics in the public schools.

So the farm demonstration agent is appointed to carry out a very ambitious scheme of education in the · above enumerated matters. He is a peripatetic teacher of these subjects, going from home to home, from farm to farm, to impart information on these various subjects. He is employed to impart agricultural information to adult farmers. He does this by university or college extension work in connection with the agricultural college of this State and the U. S. Department of Agriculture. The educational purpose to be achieved by him is a very important one to the agriculture of this State. He carries on an important branch of education.

So we are of the opinion that under the present constitution of this State the legislature can authorize the county authorities · to levy a tax for this educational purpose.

But, as the legislature has not yet seen fit to authorize the counties to engage in this university extension work, the County of Floyd was without authority to employ the plaintiff to engage in this work in that county, and to pay him therefor from the public funds of that county raised by taxation. The judgment of the court below, refusing a mandamus absolute, is

*Affirmed. All the Justices concur.*