## DECATUR COUNTY *et al. v.* ROBERTS.

1. The board of commissioners of Decatur County, under the act of the legislature creating the same, was unauthorized to make with the plaintiff the contract by which he was employed and authorized to investigate unreturned property for taxation and those liable therefor to the county during the period of the statute of limitations, and to have unreturned property, when discovered, placed upon the tax-digest so that the taxes due thereon could be collected through the regular channels, and under which plaintiff was to receive as compensation 25 per cent. of the taxes actually paid on all unreturned property discovered by him, when such taxes were paid into the county treasury.

(*a*) From the power conferred upon this board "to assess, levy, and collect such taxes as may be necessary to defray the current expenses and build and repair the public property of said county," said board was not impliedly authorized to make such contract.

(*b*) The above provision of said act vested in these commissioners only such powers as are vested in the ordinaries of this State, touching the levy, assessment, and collection of taxes, and did not invest such commissioners with such full jurisdiction over the collection of taxes as would authorize them to make this contract.

(*c*) Under the general tax system of this State, express power is conferred upon the board of tax-assessors of each county to employ an agent to seek out all unreturned property in the county and bring it to the attention of said board, and for such services said board may allow such agent a commission of 10 per cent. of the amount of the tax arising to the county from such unreturned property so discovered and placed on the books by his efforts; and this express power conferred upon the board of tax-assessors negatives any implied authority in the board of county commissioners to contract in reference to this matter.

2. The powers of public officers of this State are defined by law, and all persons must take notice of this fact. The public will not be estopped by the acts of any officer done in the exercise of a power not conferred.

(*a*) An implied contract will not arise where an express contract is unauthorized by law.

(*b*) If work or services are rendered or supplies are furnished under a contract which the county or its officers are unauthorized to make, no implied obligation arises on the part of the county to pay for such

services or supplies, even where the county receives the benefits thereof.

No. 4579.   JANUARY 14, 1925.

Certiorari; from Court of Appeals.   32 *Ga. App.* 771.

*H. G. Bell* and *Pottle & Hofmayer,* for plaintiffs in error.

*T. S. Hawes,* contra.

HINES, J.   On May 27, 1922, the commissioners of roads and revenues of Decatur County entered into a written contract with J. F. Roberts, which was spread upon the minutes of that board, and under which Roberts was employed and authorized to investigate unreturned taxes and those liable therefor to the county during the period of the statute of limitations, and to have unreturned property, when discovered, placed upon the tax-digest, so that the taxes due thereon could be collected through the regular channels. In compensation for his services Roberts was to be paid 25 per cent. of the taxes actually paid on all unreturned property discovered and disclosed by him, when such taxes were paid into the county treasury.   Under this contract Roberts discovered unreturned property on which $14,382.45 of taxes were collected and paid into the county treasury.   On this sum Roberts was entitled to receive from the county, under said contract, $3595.61.   Of this sum the county paid him $1841.16, leaving a balance due him of $1754.45.   On its refusal to pay this balance, Roberts brought suit against the county to recover the same.   The county demurred to his petition, upon the grounds: (1) that said contract violates section 1116(j) of Park's Code; (2) that the petition fails to show that Roberts had complied with the provision contained in section 17 of the act of August 18, 1919 (Ga. Laws 1919, pp. 45, 55), providing for the appointment of special tax investigators; and (3) that there was no law authorizing the county commissioners of Decatur County to make the contract with Roberts for ferreting out unreturned property for taxation.   The defendants likewise filed an answer in which they set up the above defenses.   The trial judge overruled the demurrer and said defenses, and judgment was rendered in favor of plaintiff.   To this judgment the defendants excepted and took the case to the Court of Appeals.   That court affirmed the judgment of the lower court; and the case was brought by certiorari to this court to review the last-mentioned judgment.

1.   Did the commissioners of Decatur County possess the power to make this contract?   It is the earnest insistence of counsel for

the plaintiff (the defendant in error) that this power is derived from that provision of the act creating this board of county commissioners (Acts 1904, p. 252), which declares "That said board shall have power to assess, levy, and collect such taxes as may be necessary to defray the current expenses and build and repair the public property of said county." The contention is, that full jurisdiction over the subject-matter of collecting taxes is by this statute conferred upon the commissioners, and from this express grant of power the authority to make this contract is implied. Counsel for plaintiff relies upon the able opinion of Judge Powell in *Wright* v. *Floyd County,* 1 *Ga. App.* 582 (58 S. E. 72), to support this contention. That decision declares that "Where by statute jurisdiction over a subject-matter is conferred upon county authorities, and therein the power to do certain things is expressed, the further power to contract in regard to that subject-matter is to be implied." By the above act jurisdiction is given the county commissioners to levy, assess, and collect such taxes as may be necessary to meet the current expenses, and to build and repair the public buildings of the county. In what sense are these commissioners empowered to collect these taxes? Does the language, "to assess, levy and collect," make these commissioners tax-collectors of the county taxes? It will hardly be contended that this provision of this act authorizes these commissioners to take the place of the tax-collector of their county, and gather in the taxes due the State and county. One would scarcely insist for a moment that these commissioners could employ an agent to collect the taxes due on returned property, and pay such agent any commission which they might see fit to give such agent for such service. With no more reason can it be said that this provision applies only to the collection of taxes on unreturned property. There is no such limitation in this provision of the act. We think it is applicable to taxes upon both returned and unreturned property. In what sense is it applicable? We think it was the purpose of this provision to vest these commissioners with the powers given the ordinaries to levy the special and extra taxes specified in sections 504, 506, and 507 of the Code of 1910; to raise the general tax for county purposes provided in section 508; the power, section 513, to assess the county taxes for the purposes named in this section; the power, section 522, to compel all persons who have in their hands any county

money to pay the same over; the power, section 523, to issue executions against such persons; and the power, section 528, to suspend a defaulting tax-collector, and to appoint some competent person in his stead to collect the county tax pending such suspension. It was the purpose of this act to confer upon these commissioners the above and similar powers touching the levying, assessing, and collecting of the county taxes; and not to supersede the method of collection of these taxes in force at the time of the passage of this act. We can not conceive from the meager language of the above provision of this act, that it was the purpose of this act to make so revolutionary a change in the general method of collecting taxes in Decatur County. So we are of the opinion that no such jurisdiction over the collection of taxes is conferred on these commissioners as would enable them, by implication and as incident to such jurisdiction, to make this contract. Accordingly, this case does not fall within the ruling made in *Wright* v. *Floyd County,* supra. This view is fortified by further consideration of the powers which can be exercised by counties and county officials. By the constitution of this State each county is a body corporate, with such powers and limitations as may be prescribed by law. Civil Code (1910), § 6594. The General Assembly is empowered by the constitution to create county commissioners in such counties as may require them, and to define their duties. Civil Code (1910), §§ 6548, 6600. It has been said that there is no limit to this power (*Waller* v. *Perkins,* 52 *Ga.* 233, 239; *Churchill* v. *Walker,* 68 *Ga.* 681, 686); but the extent of this power is not involved in this case. We are dealing solely with the question, what power has been given these commissioners over the collection of taxes due their county? Counties and county commissioners can exercise only such powers as are conferred upon them, either expressly or by fair implication from the statutes granting them powers; and where county authorities undertake to make contracts involving the expenditure of public funds, statutes from which such authority is sought to be inferred must be strictly construed. In such a case a clear and legal right to contract must appear. Civil Code (1910), § 303; *Albany Bottling Co.* v. *Watson,* 103 *Ga.* 503 (30 S. E. 270). Neither the counties nor their commissioners can do any act, make any contract, or incur any liability not authorized by some legislative act. *Bowers* v. *Hanks,* 152 *Ga.* 659 (111 S. E. 38). The power to make this

contract is not expressly granted to these officers. So the inquiry is narrowed to the determination of the single question, is such power given these officers by fair implication from the act creating this board of county commissioners? We think no such power should be inferred, where, under the general tax system of the State, express power is conferred upon some other public agency or agencies to-do the very thing which these commissioners undertook to do under an implied power. Implication of authority in favor of one set of officers can not exist in the face of an express grant of such authority to another set of officers.

Under the general tax system of this State, is there an express duty required of, and express authority conferred upon, other public officers of this State to ferret out unreturned property for taxation, and to enforce the payment of taxes on such property? If a person fails to make a return, in whole or in part, it is the duty of the tax-receiver to make the valuation and assess the taxation thereon, and, having done so, to double the tax thereon. Civil Code (1910), §1105. It is the duty of the tax-collector to examine the digest of the receiver, and, if he knows of any default, to make a schedule of such in the same manner as is done by the receiver, and of any other that he may then or afterwards learn, and of their property, and assess a double tax. Civil Code (1910), § 1127. By section 2 of the act of August 14, 1913 (Ga. Laws 1913, p. 123), there is established in each county in this State a board of county tax-assessors. By section 5 of this act it is provided that "The said board shall have authority to employ an agent to seek out all unreturned property in the county and bring it to the attention of the board, and for such services they may allow said agent a commission of ten per cent. of the amount of the tax arising to the county from such unreturned property so discovered and placed on the books by his efforts." 1 Park's Code, § 1116(j). Again: "All taxes levied for county purposes must be assessed upon the tax-receiver's books for each year, and collected by the tax-collector, who shall pay the same to the county treasurer." Civil Code (1910), § 517. So the tax-collector of each county is made the sole agent of the county to collect all taxes due the county on both returned and unreturned property. So we have a full and complete system for the return of property for taxation, and for ferreting out unreturned property for taxation; and a special tribunal, clothed

with express authority to employ an agent. to seek out all unreturned property in each county, so that it may be taxed. In these circumstances, we do not feel justified in holding that these county commissioners had the implied power to employ the plaintiff to do the work which the board of tax-assessors of the county is expressly authorized by statute to employ an agent to perform. There seems to us to be a growing tendency on the part of officials to usurp powers not conferred upon them by law, and to unlawfully apply public funds to purposes never intended by the legislature. This practice should be stopped.

There is nothing to the contrary of our present holding in *Cloud* v. *County of Taliaferro,* 138 *Ga.* 214 (74 S. E. 1074). In that case the county employed attorneys to collect from the railroad company taxes for which the company denied liability. The purpose was to establish the county's right to annually collect this tax. These taxes .could only be collected by litigation. To litigate at all, attorneys are necessary. Especially are their services needed to successfully litigate. There was no other method by which the county could get its right to this tax fixed, except to litigate with the railroad company, and to litigate it was necessary to employ counsel. The power of the county to employ attorneys to collect this tax and to establish its right to the tax arose from its right to collect the tax from the railroad, which denied liability and refused to pay.

2. But it is urged that the county should not be permitted to receive the fruits of the plaintiff's services and refuse to pay for them. The reply to this contention is twofold. In the first place the plaintiff is suing upon an express contract for the payment of commissions on taxes collected, not for the value of services rendered by plaintiff and the benefits of which had been received by the county. In the latter case the obligation implied by the law to pay does not originate in the unlawful contract, but springs from considerations outside of it. The plaintiff is not suing on any implied obligation of the county to pay him for services rendered, but upon an express, written contract which we have undertaken to show is illegal and void. But if the plaintiff were suing to recover upon the implied obligation of the county to pay for services rendered by him and the benefits of which were received by the county, we do not think that he could succeed. The powers of all public

officers in this State are defined by law, and all persons must take notice of this fact. The public will not be estopped by the acts of any officer done in the exercise of a power not conferred. Civil Code (1910), § 303. An implied contract will not arise where an express contract is unauthorized by law. If work or services are rendered or supplies are furnished under a contract which the county or its officers are unauthorized to make, no implied obligation arises on the part of the county to pay for such services or supplies. The plaintiff was chargeable with knowledge that the county commissioners had no power under the law to make the contract which he is seeking to enforce; and where he performs services under such contract and the county receives the benefits thereof, the county is not liable even for their reasonable value. Bartlett *v.* City of Lowell, 201 Mass. 151 (87 N. E. 195); Floyd County *v.* Owego Bridge Co., 143 Ky. 693 (137 S. W. 237); Donnelly's Law of Public Contracts, § 108; Buchanan *v.* Litchfield, 102 U. S. 293. As was said in the last-cited case, "it is only necessary to say that the settled principles of law can not, with safety to the public, be disregarded in order to remedy the hardships of special cases." In view of the prevailing tendency on the part of public officials to make contracts and expend public moneys for unauthorized purposes, we do not think that settled principles of law, designed to protect the public, should be disregarded and such transactions approved by the courts.

Counsel for the plaintiff relies upon the decision in *Cloud* v. *County of Taliaferro,* supra, to sustain the position that the county, having received the benefits of the services of the plaintiff, should be required to pay therefor. The difference between that case and the case at bar is that this court held that the county had the power to make the contract which was dealt with in that case. In the present case the county commissioners had no authority to make the contract which the plaintiff seeks to have enforced. There is nothing in *Butts County* v. *Jackson Banking Co.,* 129 *Ga.* 801 (60 S. E. 149, 15 L. R. A. (N. S.) 567, 121 Am. St. R. 244), which conflicts with the ruling which we now make. In that case the County of Butts had borrowed money upon its note, when it had no authority so to borrow or to give its note therefor; but the money so received was used by the county to discharge a legally incurred liability for a current expense. This court held that an action for money had

and received would lie in favor of the lender and against the county. The difference between that case and the one at bar is, that in the former there was a legally incurred liability, and in this case no liability at all.

3. In view of the rulings above made, we are of the opinion that the judgment of the Court of Appeals should be reversed.

*Judgment reversed. All the Justices concur.*