27451. ADAMSON, sheriff, *v.* LEATHERS, solicitor-general.

DECIDED JUNE 13, 1939. REHEARING DENIED JULY 19, 1939.

*W. E. Armistead, E. S. Kemp, A. O. Kemper, W. H. Reynolds, Beck, Goodrich & Beck,* for plaintiff in error.

*Roy Leathers, solicitor-general,* contra.

BROYLES, C. J.  Roy Leathers, as solicitor-general of the Stone Mountain circuit, instituted proceedings in the superior court of Clayton County, to remove E. L. Anderson from his office as sheriff of that county.  Leathers demurred specially to a designated part of Adamson's answer, and the court sustained the demurrer in toto and struck that part of the answer.  To this judgment Adamson excepted.  Thereafter, over Adamson's contention that "there were certain issues of fact raised by the pleading which should be submitted to a jury," the court adjudged that there was "no issuable question of fact for a jury to pass upon," and that Adamson·be removed from office as sheriff of Clayton County and that the office be declared vacant.  .To this judgment Adamson also excepted.

By paragraph, the petition substantially alleges: 1.  E. L. Adamson is a resident and sheriff of Clayton County.  2.  He "is subject to be removed by the court for sufficient cause on account of his misbehavior in his office as sheriff of Clayton County. 3.  That the said defendant under color of his office as sheriff has illegally and unlawfully taken and received various sums of money not due him and more than due him in the collection of State and county taxes, in that he has taken from Clayton County on the following itemized tax receipts five per cent.:"  (Here are set out ten "itemized tax receipts" for the year 1937.)  Immediately following the itemized statement of tax receipts, the paragraph concludes with this phrase: "and various others as shown by report of taxes collected by said defendant [and] furnished to the tax collector of Clayton County." 4.  This paragraph is identical with paragraph 3, except that the three "itemized tax receipts" are for the year 1935, that the respondent collected ten per cent. thereon, and the paragraph concludes with this phrase: "and various other tax fi. fas. for the year 1935 as shown by reports of taxes collected by

defendant [and] furnished the tax collector of Clayton County."
5. This paragraph is identical with the two foregoing paragraphs, except that the four "itemized tax receipts" are for the year 1936, that the respondent collected twenty-five per cent. thereon, and the paragraph concludes: "and various tax fi. fas. for various years as shown by report of taxes collected by defendant [and] furnished the tax collector of Clayton County."

By paragraph, the respondent's answer is as follows: 1. Admits paragraph 1 of the petition. "2. Respondent says that he is subject to be removed from office by the judge of said court for any sufficient cause, as prescribed in Code section 24-2724, but denies that any cause for removal is set forth in said petition. 3. In answer to paragraphs 3, 4, and 5 of the petition, respondent admits that he collected the taxes and charged and received the commissions alleged in said paragraphs. Respondent denies that he charged, took or received said commissions under color of his office as sheriff, and denies that said commissions were illegal or unlawful. And respondent denies that he has taken or received any other fees that were illegal or unlawful." (In order to avoid repetition, we state that the demurrer was directed to the remainder of the answer.) "Respondent says that the fees charged, taken and received by him for the collection of State and county taxes were charged, taken and received under an express written contract entered into by him and the board of commissioners of roads and revenues of Clayton County on the 7th day of June 1938, as follows:

" 'Jonesboro, Ga. June 7, 1938. We, the board of commissioners of roads and revenues of Clayton County, agree to allow the sheriff for collecting tax fi. fas. the following fees: 1937 fi. fas., 5 per cent. All prior years, 10 per cent. On any fi. fas. considered uncollectible as per audit of May 4, 1938, 25 per cent. In lieu of the above, the sheriff agrees to maintain an office with a competent person in charge of all fi. fas. and records pertaining to taxes turned over to him for collection. Said person to be placed under bond and to be responsible for all tax fi. fas. and moneys collected. All money collected to be deposited to a special tax account. We also authorize J. G. Morris, tax commissioner, to refund to E. L. Adamson, sheriff, any amount of check given to him on May 11, 1938, in the amount of $769.69 that is found to be already paid or in error. Said check being given to tax commissioner at request of

auditors. Said resolution to be placed upon the minutes of the board of commissioners of roads and revenues as passed in regular session this 7th day of June, 1938.'

"Respondent says that said contract was entered into at the solicitation and request of the board of commissioners of roads and revenues of Clayton County. Respondent has strictly performed his duties under said contract, and is ready and willing to continue to do so or to surrender up and cancel said contract, if requested to do so by the board of commissioners of roads and revenues, at any time. Respondent says that when he entered into said contract . . , he was not a lawyer, and relied upon the said board and the county attorney as to the legality of said contract. Respondent says that on April 4, 1933, the board of commissioners of roads and revenues of Clayton County entered into a similar contract by which they employed Hon. J. E. Mundy, a practicing attorney of Clayton County, to collect the taxes for 1930 and all years prior thereto for . . 25% of the sums collected. Respondent shows that he is advised and believes that sometime about January 7, 1936, a committee of the board of commissioners of roads and revenues, together with the county attorney, went to Atlanta to confer with the attorney-general as to the collection of 1936 taxes. And respondent had every reason to believe, and did believe, that the county commissioners were fully advised as to the legality of said contract of June 7, 1938. Further answering, respondent says that he is advised and believes that said contract . . was perfectly legal and regular. And respondent says that in the collection of State and county taxes alleged in said petition, he has acted in good faith under color of and in strict compliance with said contract of June 7, 1938. Defendant attaches a statement showing the amounts collected by him under said contract, and the commissions received by him."

As already indicated, the plaintiff's demurrer was directed to that part of paragraph 3 of said answer which begins with the sentence: "Respondent says that the fees charged, taken and received by him for the collection of State and county taxes were charged, taken and received under an express written contract entered into by him and the board of commissioners of roads and revenues of Clayton County on the 7th day of June, 1938," and embraces the remainder of the answer.

Under the Code, §§ 24-2814 and 77-111, the provisions of § 24-2724, providing for the removal of clerks of the superior court from office apply to the removal of sheriffs from office. § 24-2724 reads: "They [clerks of the superior court] are subject to be removed from office by the judge of the said court, for any sufficient cause, including incapacity or misbehavior in office, charges for which must be exhibited to the court in writing, and the facts tried by a jury, such clerk being entitled to a copy of the charges three days before trial." "Sufficient cause means legal cause, and that which specially relates to and affects the administration of the office, and must be restricted to something of a substantial nature directly affecting the rights and interests of the public." *Lancaster* v. *Hill*, 136 *Ga.* 405, 408 (71 S. E. 731, Ann. Cas. 1912C, 272). Under the Code, § 92-5102, it is the duty of tax collectors, on December 20 of each year, to "issue executions against each delinquent or defaulting taxpayer in their respective counties, unless further time is allowed as provided by law." Under Code, § 92-5103, it is the duty of the officer issuing the executions to place them "in the hands of some officer authorized by law to collect the same." Code, § 92-5104, is as follows: "Duty of collecting officer. The officer in whose hands the execution is placed shall proceed at once to collect the same, and when said execution is paid by the defendant, voluntarily or by levy and sale, the officer shall detach from the execution the tax receipt and enter thereon the amount collected, including all costs and commissions, and also make a similar entry on the execution, the receipt to be delivered by the officer to the defendant, and the execution to be returned with the amount of tax collected to the tax collector, who shall at once copy the entry of the officer on his execution docket and file the execution in his office." "Whenever the sheriff or other officer of any county shall collect any tax execution over $100, he shall be entitled to $1 for costs; and for collecting any tax execution of $100 or under, 50 cents for costs." Code, § 92-8001. The next section, 92-8002, reads: "Tax collectors shall be allowed a fee of 50 cents for issuing tax executions; but no tax collector, sheriff, or constable shall receive costs on said execution, *unless the same shall be collected from the defendant.*" (Italics ours.) "Any public officer who shall charge or take fees not allowed by law, or for service not performed, shall, on conviction or proof thereof, be dismissed from office." Code, § 89-702.

While the instant proceedings were not brought under this Code section, but were instituted under § 24-2724, supra, the section last quoted is at least indicative of the policy of this State that public officers shall not charge or take fees not allowed by law. "The rule is well settled that where fees or salaries are established for the services of public officers, the policy of the law prohibits special contracts between them and the public. 9 Cyc. 496; 15 Am. & Eng. Enc. Law, 964; Greenhood on Public Policy, 337; Clark on Contracts, 282, et seq." *Hall* v. *Stulb,* 126 *Ga.* 521, 523 (55 S. E. 172). "The powers of public officers of this State are defined by law, and all persons must take notice of this fact." *Decatur County* v. *Roberts,* 159 *Ga.* 528 (2) (126 S. E. 460). "Neither the counties of this State nor their officers can do any act, make any contract, or incur any liability not authorized by some legislative act applicable thereto." *Bowers* v. *Hanks,* 152 *Ga.* 659 (111 S. E. 38). In Black's Law Dictionary, page 222, "Color of office" is defined as, "a claim or assumption of right to do an act by virtue of an office, made by a person who is legally destitute of such right." Code, § 92-7105, relating to insolvent tax lists, reads as follows: "When the collector shall have his insolvent list credited, it shall be the duty of the ordinary, or other authority having charge of county affairs, allowing it, to retain a copy of such list and return the executions to the tax collector, who shall cause them to be placed in the hands of some levying officer for collection, to be levied and sales thereunder to be made in accordance with the regulations governing sales under executions issued upon common-law judgments. The levying officer shall be entitled to the same fees as he is entitled to for other executions, plus two and one-half per centum, and the balance shall be paid by the levying officer to the tax collector, whose duty it shall be to transmit the county's taxes to the county treasury and the State's taxes to the State treasury."

In paragraph 3 of his answer, the respondent "admits that he collected the taxes and charged and received the commissions alleged in" paragraphs 3, 4, and 5 of the petition, *"but denies that he charged, took or received said commissions under color of his office as sheriff,"* or that "said commissions were illegal or unlawful," and pleads that he acted "under an express written contract entered into by him and the board of commissioners of roads and

revenues of Clayton County." Under the alleged contract, said board "agree to allow the sheriff" the designated fees; "the sheriff agrees to maintain an office," etc.; and the tax commissioner is authorized "to refund to E. L. Adamson, sheriff, any amount of check," etc. The "statement showing the amounts collected by him under said contract," which is attached to the answer, is headed: "Miss A. L. Rutherford, deputy sheriff under E. L. Adamson, sheriff, Clayton County, Georgia," and shows that the commissions stipulated in the alleged contract were allowed the *sheriff*. Applying the law to the pleadings, we are satisfied that in collecting and retaining the commissions in question the respondent was acting under color of his office. Under the authorities cited, the alleged contract was against public policy and was illegal; and it constituted no valid defense to the proceedings instituted that the respondent entered into said contract at the solicitation of the board of commissioners, or that "he strictly performed his duties" thereunder, or that he was willing to cancel the contract, or that, for the various reasons pleaded, he believed that "said contract . . was perfectly legal and regular."

In short, we hold that the court did not err in sustaining the demurrer and striking that part of the answer attacked by the demurrer. With the demurrer sustained and that part of the answer attacked by it stricken, the answer admits that the respondent "collected the taxes and charged and received the commissions as alleged" in the petition, but "denies that said commissions were illegal or unlawful." In this situation there was no question of fact for a jury to pass on, and it was the duty of the court to determine whether the facts admitted by the respondent authorized his removal from office. The law fixes and limits the compensation of sheriffs, and there is no law authorizing sheriffs to charge and receive the commissions which the respondent admits he charged and received. Under Code, § 24-2724, supra, sheriffs are subject to be removed from office for "any sufficient cause;" and sufficient cause means a cause relating to and affecting the administration of the office and material to the interests of the public. See *Lancaster* v. *Hill,* supra. Surely, if a sheriff, under color of his office and contrary to law, procures as commissions for collecting tax executions any part of the taxes that should rightfully be used for the benefit of the public, he has done something which

very materially affects the administration of his office and the interests of the public. Conceding that the respondent acted in good faith in the instant case, instances might arise where weak or unscrupulous officers might fail to perform their duties in collecting tax executions in the first instance in order to procure large and illegal commissions later. We therefore hold that the court did not err in adjudging that there was no "issuable question of fact for a jury to pass upon," that Adamson be removed from office as sheriff of Clayton County, and that the office be declared vacant. *Judgment affirmed. MacIntyre and Guerry, JJ., concur.*