COOLEY et al. v. BUIE et ux. (No. 746—4687.)

(Commission of Appeals of Texas, Section B. Feb. 23, 1927.)

1. Partition ☞63(1)—Defendants in partition suit have burden of establishing affirmative matters on which they rely for cancellation of plaintiffs' deed for part interest.

Where defendants in partition suit plead affirmative matters praying for cancellation of deed for part interest held by plaintiffs, and that title to land be vested in them, burden of proof to establish truth of such matters relied on for cancellation rests on defendants.

2. Cancellation of instruments ☞1—Court of equity only can entertain suit to procure decree for cancellation of conveyance.

Only a court of equity may entertain a suit for the express purpose of procuring cancellation of conveyance, and only a court of equity can render a decree conferring in terms that exact relief.

3. Action ☞22—Only courts of law can entertain actions for damages.

A court of law only can entertain action for recovery of damages.

4. Cancellation of instruments ☞37(1), 47—Ejectment ☞63, 93—Sufficiency of pleadings and proof in action to cancel deeds and for possession are determinable by rules of practice in ejectment.

An action in equity for cancellation of deeds and possession of land is in nature of ejectment, and sufficiency of pleadings and proof must be determined by rules of practice in that action.

5. Equity ☞65(1)—One seeking equitable relief must come into court with clean hands.

He who comes into court seeking equitable relief must come with clean hands.

6. Attorney and client ☞143—Burden of showing fairness of contract for additional compensation, entered into during existence of relation of attorney and client, rests on attorney.

Although contract between attorney and client for former's compensation, entered into during existence of relation, is not void but pre-

---

(291 S.W.)

sumptively invalid, burden of showing fairness rests on attorney.

**7. Attorney and client ☞143—Court of equity may cancel contract between attorney and client only to protect latter against undue influence of former.**

Power of court of equity to cancel contract between attorney and client is limited to protecting latter against undue influence of former.

**8. Attorney and client ☞143—New contract between attorney and client is not binding on client unless new duties are assumed by counsel and client secures additional advantages.**

Original contract between attorney and client may be abrogated by mutual consent, and new contract mutually changing the duties and obligations of the parties entered into, but, unless new duties are assumed by counsel and client secures additional advantages, and understands his rights under the original agreement, it is not binding upon him.

**9. Attorney and client ☞140—Attorney is entitled to extra compensation for services not contemplated as probable at time of agreement, but made necessary by subsequent developments.**

Where attorney renders services clearly not contemplated as probable or necessary at the time of making the agreement but made necessary by subsequent developments in progress ·of case, he is entitled to extra compensation on ground that original agreement did not cover the services performed.

**10. Attorney and client ☞143—Agreement for additional compensation for attorneys employed to prosecute voluntary bankruptcy proceeding, involving litigation of trustee's adverse claims to homestead, held supported by consideration.**

Where original contract between attorneys and client contemplated attorneys' employment for prosecution of voluntary proceeding in bankruptcy, subsequent agreement for additional compensation for prosecuting legal proceedings in federal court to determine adverse claims asserted by trustee to certain lands belonging to the client and claimed as homestead, expenses of which litigation was borne by attorneys, *held* to have been supported by sufficient consideration.

**11. Contracts ☞147(1)—Written contract between competent parties, free from fraud, accident, or mistake, must be construed in accordance with parties' intention consistent with terms.**

Written contract between contracting parties, which is free from accident, fraud, or mistake, must be construed by courts in accordance with parties' intention and consistent with its terms, since parties' intention fixes its character and their liability thereon.

**12. Evidence ☞441(1)—Written contract controls parties' rights in preference to parol one.**

A written contract must control rights of parties in preference to parol one.

**13. Contracts ☞169—Court may look to circumstances under which contract was made to ascertain true construction and parties' intent.**

Court may look to the circumstances under which a contract was made to ascertain its true construction and intent of parties, and the construction placed on the contract by the parties themselves is a circumstance of strong probative force.

Error to Court of Civil Appeals of Tenth Supreme Judicial District.

Suit by James A. Cooley and G. O. Crisp and others against I. D. Buie and wife. Judgment for defendants as against plaintiffs named was affirmed by Court of Civil Appeals (284 S. W. 702), and plaintiffs named bring error. Reversed and remanded, with directions.

James A. Cooley and G. O. Crisp, both of Kaufman, for plaintiffs in error.

T. R. Bond, of Terrell, for defendants in error.

SHORT, J. James A. Cooley, G. O. Crisp, Angus G. Wynne, and Toddie L. Wynne brought a partition suit against I. D. Buie and his wife, Ida, alleging that they were the joint owners of four tracts of real estate situated in Kaufman and Van Zandt counties, in which the original plaintiffs alleged they were entitled to an undivided one-third interest in said lands, and the original defendants were entitled to an undivided. two-thirds interest therein. It was also alleged that the property was not susceptible of an equitable partition, and recovery was sought also for a proportionate part of the rents.

Buie and wife, among other things· contained in their answer, denied that the plaintiffs owned any of the property sought to be partitioned, but alleged that they (the defendants) were the exclusive owners of all of it, and that the land constituted their homestead, specially setting up as matters of defense that Cooley & Crisp, being attorneys at law, had entered into a contract with I. D. Buie, who was insolvent, and who .had been declared a bankrupt, to· represent him in said bankruptcy proceedings for a fee of $50, which was tendered in court, and that the instrument of writing in the form of a conveyance of a part of the land made to all the plaintiffs was in fact a· mortgage, and further that the instrument was executed under duress, and that the services contemplated by the parties to the first contract were the same as those contemplated by the second contract, by reason of which the same was without consideration and invalid, and also pleaded that this instrument was never in fact delivered. The instrument itself recited a consideration of $1,000, paid by James A. Cooley, G. O. Crisp, A. G.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Wynne, and T. L. Wynne, but explained that the consideration consisted of legal services in lawsuits pending in the district court of Kaufman county, in the bankruptcy court for the Northern district of Texas at Dallas, and for settlements and adjustments with creditors and other parties.

Cooley & Crisp and Wynne & Wynne specifically pleaded a condition of affairs between the parties, the legal effect of which, upon the theory that the statements in the replication were true, was to uphold the instrument according to its literal terms.

The court submitted the case to a jury upon special issues; the questions and answers being as follows:

"Question 1: Before the filing of the petition in the United States bankrupt court at Dallas, did Jas. A. Cooley and G. O. Crisp, both or either of them agree to represent the defendant I. D. Buie as his attorney, in all matters incident to the bankrupt proceedings, including the preparation and filing of the petition and schedule, attend the meeting of his creditors, get his discharge as a bankrupt, and have the exempt property set aside to him and accept therefor such attorney fees as might be allowed by said court? To question No. 1, we, the jury, answer, 'Yes.'

"Question 2: After the trustee in bankruptcy had refused to set aside the lands in controversy to defendants as their homesteads, did Jas. A. Cooley and G. O. Crisp, both or either of them, agree to continue as defendants' attorneys and have the property declared exempt, by the appellate courts for an attorney fee of $50? To question No. 2, we, the jury, answer, 'No.'

"Question 3: After the trustee in bankruptcy had refused to set aside the land in controversy to the defendants as their homestead, did A. G. Wynne agree to represent the defendant I. D. Buie, in all matters, incident to having it set aside, for an attorney fee of $50? To question No. 3, we, the jury, answer, 'No.'

"Question 4: Did Jas. A. Cooley and A. G. Wynne, both or either of them, agree with the defendants that the deed in question should be placed in the hands of Chas. Ashworth and not be delivered to the grantees, and would be re-returned to the defendants on the payment of $800? To question No. 4, we, the jury, answer, 'No.'

"Question, 5: Is the land in question susceptible to partition in kind in the proportion of one-third and two-thirds? To question No. 5, we, the jury, answer, 'Yes.'

"Question 6: What is the reasonable rental value of the four tracts of land in controversy per year? To question No. 6, we, the jury, answer, '$1 per acre.'

"Verdict on Special Issues Submitted by Plaintiffs.

"Question 8: After the trustee had refused to set aside the exemptions to I. D. Buie and Ida Buie, was it mutually agreed between G. O. Crisp, Jas. A. Cooley, and I. D. Buie that, as the trustee had refused to set aside the exemptions and the matter had to be further contested, G. O. Crisp and Jas. A. Cooley should have an additional fee of $800 or one-third of the land, in connection with the firm of Wynne & Wynne? To this question, we, the jury, answer, 'Yes.'

"Verdict on Special Issues Submitted by Defendants.

"Question 9: At time Mrs. Buie signed the deed in question, did she do so that it should be held and not delivered to the plaintiffs, but whenever the plaintiffs should be paid $800 same should be returned to her or her husband? To this question, we, the jury, answer, 'No.'

"Question 10: At the time the defendant Mrs. Buie signed the deed in question, did she do so with the understanding between her and her husband that she would sign the deed and deliver it to Chas. Ashworth or some responsible person to be held until she or her husband could pay plaintiffs $800, and when paid the deed should be returned? To this question, we, the jury, answer, 'No.' "

Each party submitted a motion to render judgment in accordance with the findings of the jury in his favor, whereupon judgment was rendered against James A. Cooley and G. O. Crisp in favor of the defendants Buie that Cooley & Crisp take nothing by their suit, but rendered a judgment in favor of A. G. Wynne and T. L. Wynne against Buie and wife, adjudging to them a one-sixth joint interest in the lands described, and to the defendants Buie and wife the remaining five-sixths. The court found that the land was susceptible to partition, and entered the proper orders upon that premise securing a partition. The judgment in favor of Wynne & Wynne became final by the failure of either party to appeal therefrom, but Cooley & Crisp filed a motion for a new trial, which was overruled, and, upon appeal to the Court of Civil Appeals, the judgment of the trial court was affirmed. In due time, James A. Cooley and G. O. Crisp presented a writ of error to the Supreme Court, which was granted, and the case has been referred to this section of the Commission of Appeals for consideration. The opinion of the Court of Civil Appeals is to be found in 284 S. W. 702.

The first assignment of error and the propositions thereunder follow:

"The honorable Court of Civil Appeals erred in holding that the plaintiffs in error did not plead or offer to prove that they performed any services for defendants in error other than those services which the jury found they were obligated to perform under the original contract, because plaintiffs in error pleaded the ownership of the property, while the defendants in error pleaded that the original contract contemplated the performance of all services that had been performed. This the plaintiffs in error denied.

"First Proposition.

"Where plaintiffs pleading the ownership of property are met by the answer of defendants that the deed of plaintiffs is a mortgage, obtained by duress and overreaching and without

consideration, with a prayer for cancellation, to which answer of defendants the plaintiffs replied by denying all of defendants' answer, generally and specifically, then pleaded that the original contract only contemplated the performance of three things, and that it did not contemplate employing them to contest over the property of the defendants nor a contest over having his homestead set aside nor to try cases in other courts, and then offered proof of new and additional services performed, including the deed itself, which sets out, 'while the consideration is stated to be cash, the consideration is for $1,000 which consists of legal services in lawsuits *pending in the district court of Kaufman county*, in the bankruptcy court for the Northern district of Texas, at Dallas, and for settlements and adjustment with other parties,' as well as other proof of new services rendered to the defendant, the pleading and proof is clear, sufficient, and ample, to show services other than contemplated in the original contract.

## "Second Proposition.

"Where the. pleading and proof is clear and sufficient over a contested issue, the Court of Civil Appeals erred as a matter of law in holding that there was no proof on such issue and no pleading concerning such issue."

The second assignment of error and the proposition thereunder are as follows:

## "Second Assignment of Error.

"The Court of Civil Appeals erred in holding that after the relationship of attorney and client such parties may not abrogate a contract and make a new contract for additional compensation in view of the more onerous services than first contemplated, the filing of new suits, the peculiar facts, and in view of the attorneys paying expenses of client's litigation.

## "Proposition.

"Attorneys and client may abrogate a contract and make a new contract for additional compensation where new services are to be performed by the attorneys."

The third assignment of error, with its supporting proposition, is as follows:

## "Third Assignment of Error.

"The court erred in holding that, 'after the contest over the homestead was filed, appellants demanded of appellee that they pay them additional compensation in cash or in lieu thereof execute to them a deed for an undivided one-sixth interest in their homestead property in consideration of their representing them through the federal courts in said contest, and refused to represent them until they executed and delivered the deed,' for the reason that there is no testimony in the record, or finding of the jury to justify or authorize such holdings as appellees plead that appellants (plaintiffs in error) threatened to quit the case and not prosecute the same, but there is no proof, beginning with his (Buie's) testimony, that appellants (plaintiffs in error) ever said that they were going to quit the case, but, on page 23, statement of facts, defendant in error Buie testified to a mutual agreement, and on page 24, state-

ment of facts, detailed from his viewpoint a mutual and satisfactory arrangement. Never a word of testimony about any threat to quit the case until after the case was in the Supreme Court of the United States, he, testifying about Wynne & Wynne, and he thought Wynne & Wynne had quit the case. All the testimony shows that at all times plaintiffs in error were representing him through all the courts, though his case had become more complicated; that he had gone to employ another firm of lawyers to assist in the litigation, and was going to pay both firms of lawyers alike.

## "Proposition.

"It is error for any court to make a finding of fact without support in the pleadings or in the proof, or to make a finding unsupported by any testimony or evidence offered on the trial or set out in the statement of facts filed in the appellate court."

The prayer forming a part of defendants' original answer is in the following language:

"Wherefore, these defendants resist the partitioning of the lands described in plaintiffs' petition, because the defendants are the sole owners of said premises, and would pray of this court that the partition be denied, that said deed be canceled and title to the whole of said lands be vested in these defendants and divested out of the plaintiffs, and for such other and further relief as to the court shall seem meet and proper, and of this they will ever pray."

[1] It will thus be seen that the answer of the defendants in error comprised defensive matter to the suit for partition such as would admit the introduction of testimony contradicting the truth of the material allegations in the petition of the original plaintiffs; and the matters of an affirmative nature, the truth of which, when duly supported by testimony and declared by the court, would entitle them to have granted their prayer and to have the deed described in the pleadings and offered in evidence by both parties canceled, and the title to the whole of the lands described in said deed vested in the defendants in error and divested out of the original plaintiffs. In so far as the matters which are purely defensive are concerned, unless the original plaintiffs overcome these by the introduction of testimony preponderating in weight, the defendants in error would have been entitled to a judgment that the original plaintiffs take nothing, but a different rule applies to the affirmative matters pleaded by the defendants in error, where they pray that the said deed be canceled and title to the land be vested in them and divested out of the original plaintiffs. The burden of proof established by a preponderance of the evidence rested upon them to establish the truth of the matters upon which they base their prayer for cancellation and the investure of title in them and the divesture thereof out of the original plaintiffs.

It has been seen that two of the original

plaintiffs were granted the relief for which they prayed in their original petition, while two of the original plaintiffs were denied this relief. It has been seen also that the affirmative prayer of the defendants in error was denied as to two of the original plaintiffs and granted as to two of them. It is further shown by the record that the only reason for the distinction made by the trial court, as well as the Court of Civil Appeals, between the rights of James A. Cooley and G. O. Crisp upon the one side, and Angus G. Wynne and Toddie L. Wynne upon the other, is based purely and exclusively upon the construction given to the answer to question 1 by the jury. The answer to this question had no relation whatever to the instrument which the defendants in error successfully sought to cancel, except in the most incidental way. The defendants in error in their answer denied that any of these four original plaintiffs had any interest whatever in the land described in their petition, saying in effect that, while the instrument under which they claimed was in the form of a deed, yet, as a matter of fact, it was a mortgage, and so intended by all the parties, and, the lands covered by the instrument being a homestead, the instrument was void; but, if mistaken in this, then they plead that the instrument was obtained by coercion and exercise of undue influence, on account of which it was not the free and voluntary act of the defendants in error, and therefore not binding upon them; but, if they are mistaken in these two matters, then they further plead that the instrument was never in fact delivered with their consent, but upon the contrary was delivered without their consent, and no legal delivery of the instrument ever took place, on account of which fact the instrument had no binding force upon them; but they further plead that, if they were mistaken as to all of these matters, yet nevertheless the instrument was executed without any consideration, and was therefore void on that account. The record shows that as to Angus G. Wynne and Toddie L. Wynne none of these contentions were sustained, but, upon the contrary, were disproved, and as to James A. Cooley and G. O. Crisp none of them was sustained except the last contention, being to the effect that the instrument evidencing the conveyance of the lands to these four original plaintiffs was as to James A. Cooley and G. O. Crisp a nullity only because of the answer to question No. 1, which, as construed by the trial court and the Court of Civil Appeals, means that James A. Cooley and G. O. Crisp had in a verbal agreement with the defendant in error I. D. Buie obligated themselves to perform the same services which they afterwards rendered to both the defendants in error, and which are mentioned in the instrument executed, conveying the land in controversy to James A. Cooley, G. O. Crisp, Angus G. Wynne, and Toddie L.

Wynne, and therefore, as to James A. Cooley and G. O. Crisp, this instrument was void.

These contentions of the defendants in error were first made in their answer filed November 19, 1924, while the date of the instrument thus canceled as to James A. Cooley and G. O. Crisp was July 27, 1922, and the date of its record was August 5, 1922, more than two years having elapsed after the instrument had been recorded before the defendants in error sought in any way to have it annulled, and in the meantime having received, according to the finding of fact by the court in its judgment, full value for the lands conveyed; and, according to the record, up to the time the answer was filed no offer had been made by them to pay either of these original plaintiffs anything whatever for the expenses of the litigation conducted for their benefit and borne by the original plaintiffs, or for their services rendered by the original plaintiffs. For the first time, although more than two years had expired and in the meantime their homestead had been preserved to them, by reason of the rendition of the services of the original plaintiffs, the consideration expressed in the deed, the defendants in error offered to the four original plaintiffs the sum of $100, of which $50 was to go to Angus G. Wynne and Toddie L. Wynne and $50 to go to James A. Cooley and G. O. Crisp, in full satisfaction of services which the trial court found to be worth $850, the full value of the interest of the defendants in error in the lands conveyed.

[2-5] A reference to the answers of the jury to the questions propounded by the court shows that nine of them related to the transaction culminating in the execution and delivery of the conveyance to the original plaintiffs of the lands described. This conveyance imports upon its face absolute verity and validity. It is duly signed and acknowledged by persons having the authority to make the contract to be found within the four corners of the instrument. With its introduction under the facts found in the record in this case, full proof was made of ownership in the lands described therein to the extent of the interest mentioned, and the right to have these lands partitioned if susceptible of partition. In that way the original plaintiffs made out a prima facie case entitling them to the relief described in their prayer. It then became incumbent upon the defendants in error under their pleadings to become actors and to establish in an affirmative way, by a preponderance of the evidence, their alleged right to have this instrument canceled, and its apparent meaning as gathered from its four corners annulled. This they sought to do, not only as to the plaintiffs in error, but also as to Angus G. Wynne and Toddie L. Wynne, by offering to pay for services which the court found to be worth $850 at the time the deed was executed, two years

(291 S.W.)

thereafter, the sum of $100. The proceeding by which they sought to accomplish this purpose was purely an equitable one. Only a court of equity can entertain a suit for the express purpose of procuring a conveyance to be canceled, and only a court of equity can render a decree conferring in terms that exact relief. A court of law only can entertain an action for the recovery of damages. An action in equity for the cancellation of deeds and possession of land is in the nature of ejectment, and the sufficiency of pleadings and proof is to be determined by the rules of practice in that action. He who comes into court seeking equitable relief must come with clean hands. This doctrine applies to cases including the cancellation of instruments where the parties seeking the aid of the courts have been guilty of conduct in violation of the principles of equity jurisprudence with reference to the subject-matter of the litigation. The subject-matter of litigation in this proceeding was the interest of the original plaintiffs asserted to exist in the lands described in the conveyance offered in evidence. It did not include the verbal contracts previously made between the parties, and we therefore conclude that the question before the Supreme Court must be determined by the facts found by the jury in answer to questions 2, 3, 4, 8, 9, and 10, together with the further fact found by the court to the effect that the compensation received by the defendants in error in exchange for the conveyance of the one-third interest in the lands amounted to $850, and that the value of the interest in the land was approximately this amount.

We find the following language in the replication of the plaintiffs in error to the special pleading in the answer of the defendants in error:

He (meaning I. D. Buie) "did not employ them (meaning Cooley & Crisp) nor contemplate employing them to contest over his property in the event the referee refused to set aside his homestead; neither did he discuss such matter with them; neither did he ask or employ them to look after or have his homestead set aside, nor to fight any contest in regard to his homestead, for neither party at that time contemplated that there would be any contest, and I. D. Buie and his attorneys well knew, and each of them, that the bankruptcy court would not allow a fee for contesting a report of a trustee, nor for contesting for exemptions, but would only allow fees for filing of schedules and procuring a discharge. This was explained to I. D. Buie."

And further in the same document:

"So, I. D. Buie went to Wynne & Wynne (meaning the other original plaintiffs) and Cooley & Crisp and appealed to them to help him save his home."

And further in the same document:

"And it was further explained to I. D. Buie that he was trying to set aside a mortgage to

291 S.W.—56

Mayfield Company and to Sanger Bros. on part of his land, and to make a straight deed" (meaning the instrument in favor of Mayfield Company and Sanger Bros.).

It was alleged in the same instrument that the plaintiffs in error were "to represent them (meaning Buie and wife) and to spend large sums of money for expenses to work over a year in the case, to try it in the United States District Court at Dallas, the Circuit Court of Appeals at Fort Worth and New Orleans, and the Supreme Court of the United States."

And further in the same instrument it is stated that the original plaintiffs "deny that they or I. D. Buie dreamed or knew that they were not going to fight the case or that they threatened to quit his case."

In support of the allegations in the reply of the original plaintiffs to the special defenses set up by the defendants, the instrument in the form of a deed was introduced, in which it was stated that the true consideration for the execution and delivery of the deed was the "legal services in lawsuits pending in the district court of Kaufman county, Tex., in the bankruptcy court for the Northern district of Texas, at Dallas, and for settlement and adjustments with creditors and other parties."

James A. Cooley testified:

"I did not at that time agree to represent him (meaning I. D. Buie) in the district court and the county court. I did not have any arrangements with him (Buie) to represent him in any case except the one I have just described. * * * Mr. Buie did not question our right to ask a fee. He said he was going to raise the $800. * * * After the appeal was begun, Miss Grace Fitzgerald, as I recall, was paid $25. As I recall we paid the surveyor $10. Cooley & Crisp paid for the three or four trips we made to Dallas. * * * We paid for printing the briefs; my recollection is it was $65. * * * The firm of Cooley & Crisp paid my expenses to Fort Worth. I cannot recall the aggregate amount of expense. * * * We explained to him that day just as I have explained that we would have to have a fee for our services."

G. O. Crisp testified:

"We had a conversation in our office with reference to prosecutions further of his claims in the court, taking it to the district court. Mayfield and Sanger Bros. had filed a complaint against him in the district court to foreclose on a deed of trust on the 66 acres of land. We had a conversation about that in our office; we were to file a motion here in the district court. * * * A contest was filed; we explained to him then that he would have to arrange for a fee; he did not demur; before he went to Wynne & Wynne this matter for arrangement for a fee, if we went ahead with the contest in the district court was discussed with Mr. Buie and the other member of my firm. * * * This deed recites that the consideration is $1,000, which consist of legal services in lawsuits pending in the district court of Kaufman county, in the

bankruptcy court for the Northern district of Texas, at Dallas, and for settlement and adjustments with creditors and other parties. There was a lawsuit pending in the district court of Kaufman county at that time; I think Mayfield and Sanger Bros. filed a suit to foreclose a deed of trust on a part of this land. I did not see the papers, but the case was on the docket. * * * I do not know that when this contract was made to represent Mr. Buie and his wife that she was made a party to that litigation in the bankrupt court and was represented all the way through."

James A. Cooley testified:

"I made Mrs. Buie a party to this suit when I made the application—when we contested the trustee's report. When the case was tried in Dallas, of which she was a party, she was present. She was also on the witness stand and testified as to her claim; she was not a party in the suit until the contest was filed. Mrs. Buie did not employ me any further than through her husband. * * * She did not authorize me to file the papers in that court * * * Mrs. Buie did not demur at being made a party to the suit. * * * I do not know that she was a party to the suit. Mr. Buie was in my office when I prepared the papers. I signed my name to the papers as Mrs. Buie's attorney."

T. L. Wynne testified:

"He (meaning I. D. Buie) said Mayfield and Sanger Bros. had a deed of trust on the land, and it looked like he was going to lose the land."

A. G. Wynne testified:

"We went ahead and examined his wife (Mrs. Buie). I did not know until I came to the contest that day that his wife was in the litigation; she had been made a party to the contest. * * * No agreement was made up there that day about a fee except he was to come the next day or two and arrange a fee. He did come in and said he came to arrange a fee, and I told him that you (Cooley) were as interested as I was and that he would have to see us together. So we went to your (Judge Cooley's) office. We there had a conversation about the fee. * * * We had a survey made of the land and made a complete map. * * * I took the surveyor down there in my car, and we paid him $10. * * * I told him (Buie) it would have to be done in the written and printed form. I explained to him that we were getting stuck pretty heavy on the expenses; * * * the way I understood it, we (attorneys) were to pay the briefing expenses ourselves and Mr. Buie was to take care of the rest."

I. D. Buie testified:

"I had a suit then pending in the district court of Kaufman county, filed by Sanger Bros. and Mayfield to foreclose. It was Judge Cooley's duty to look after that suit for me. When I first employed him I did not know that suit was going to be filed; whatever happened I employed him to represent me in the bankrupt court. I did not employ him to represent me in the district court here."

The Court of Civil Appeals construed the finding of the jury in effect to mean that the original employment of Cooley & Crisp by Buie contemplated the rendering by Cooley & Crisp of the same services which were in fact rendered after the making of the second contract and in accordance with the "well-settled principle of law in Texas that an agreement by a client with his attorney to pay the attorney an additional sum above the amount theretofore agreed upon, no additional services by the attorney being contemplated, is, in the absence of peculiar facts, invalid," approved the judgment rendered in the district court. This judgment contains these recitations:

"The court finds, on a question of quantum meruit, the service rendered and the benefits received by defendants I. D. Buie and Ida Buie from the plaintiffs would be worth the sum of $850 or about one-third of the equity in the land in controversy.

"The court finds upon the uncontroverted facts, as well as the verdict of the jury, that the plaintiffs Jas. A. Cooley and G. O. Crisp have no interest in the lands herein sought to be partitioned, but this court finds upon the uncontroverted evidence and the verdict of the jury that the plaintiffs Angus G. Wynne and Toddie L. Wynne, together with the defendants I. D. Buie and Ida Buie, are the sole owners, and are by law entitled to partition and division of the hereinafter described tracts of land in the following shares, to wit: One-sixth joint interest or share to Angus G. Wynne and Toddie L. Wynne, they having announced in open court that they would take their share jointly; that I. D. Buie and wife Ida Buie's portion or shares in said tract of land is five-sixths."

A proper construction of these findings of fact by the trial court, when taken together and in connection with the judgment rendered in favor of Wynne & Wynne, excludes the idea that the instrument by virtue of which Wynne & Wynne secured a recovery was a mortgage, as well as the idea that it was not delivered, and also the idea that it was procured by duress and undue influence, and supports the idea that it was invalid as to Cooley & Crisp only because of the fact that at the time it was executed and delivered the relation of attorney and client existed between Cooley & Crisp on the one part and I. D. Buie and his wife, Ida Buie, on the other; thus and thereby limiting this record to the one question of whether said instrument was invalid as to the parties before this court on account of the fact that it was an agreement by clients with their attorneys to pay the attorneys an additional sum. When this report of the referee was made, for the first time the wife of I. D. Buie appeared upon the scene and filed her claim under the law that she was entitled to have these lands set apart to her as her homestead. This application was made by the plaintiffs in error, whose services were accepted by Mrs. Buie,

and no claim is made that they were not authorized to do what they did. She was the wife of I. D. Buie, and her rights were the same as his in the property involved, provided it was in fact their homestead. The services were rendered, not only by Wynne & Wynne, but by Cooley & Crisp. All the expenses incident to the litigation were borne by the original plaintiffs. The defendants in error accepted the benefits of those services and of the expenses, which resulted in securing to the defendants in error a judgment declaring the report of the referee to have been erroneous, and the action of the trustee to have been illegal and wrongful, which judgment, however, was not made final until the suit had gone through the District Court (287 F. 896) and through the Circuit Court of Appeals (293 F. 1021), and into the Supreme Court of the United States (264 U. S. 588, 44 S. Ct. 402, 68 L. Ed. 864), in all of which proceedings the defendants in error were represented without expense to them by the plaintiffs in error.

After the litigation involving the right of the defendants in error to claim the lands as their homestead had resulted favorably to them by the judgment of the Supreme Court of the United States, up to which time the defendants in error had not interposed the objections to the instrument evidencing the contract between the plaintiffs in error as well as Wynne & Wynne and themselves, which they set up in the answer to the suit for partition, and in the meantime had accepted the services of the original plaintiffs and had permitted them to pay all the expenses, the defendants in error for the first time interposed to this suit for partition against the plaintiffs in error, as well as against Wynne & Wynne, the claim that the instrument was a mortgage, was obtained by coercion and duress, was not legally delivered, and was without consideration, not only as to the plaintiffs in error, but also as to Wynne & Wynne; the latter occupying at the time the instrument was executed the same fiduciary relation to them as did the plaintiffs in error, though that relation was not of so long a standing and was based upon a different consideration.

[6-9] The contract in this case between the parties is evidenced by a written instrument. Its declarations upon their face are sufficient to divest out of the defendants in error and invest in the plaintiffs in error and their co-plaintiffs, Angus G. Wynne and Toddie L. Wynne, an undivided interest in the lands described. This instrument was duly acknowledged, legally delivered, and publicly spread upon the registration records. Upon its face it had all the earmarks of a valid contract. Until it was successfully assailed, the rights of the parties were fixed thereby. As the record has reached the Supreme Court, the only defect claimed upon which to base a cancellation of the instrument is the alleged fact that it was executed without consideration. The evidence is uncontroverted, which fully establishes that the plaintiffs in error, in connection with Angus G. Wynne and Toddie L. Wynne, not only rendered legal services which under the testimony could not have been contemplated by the parties at the time the original contract was made between the plaintiffs in error and the defendant in error, I. D. Buie, such, for instance, as making Ida Buie, his wife, a party to the bankrupt proceedings and representing her interest in those proceedings, and also representing the defendant I. D. Buie in the suit which was afterwards instituted in the district court of Kaufman county, but that the plaintiffs in error, in connection with Angus G. Wynne and Toddie L. Wynne, paid the expenses of the litigation through all the courts, exclusive of the expense of having the briefs printed. The evidence is also uncontroverted which fully establishes that both of the defendants in error received the benefits flowing to them from the expenditure of such moneys and the rendition of such services, while the trial court found as a fact that these expenses and services were of the value equal to the value of the interest which defendants in error had in the lands conveyed. Even from under the terms of the original contract between plaintiffs in error and I. D. Buie, the latter makes no contention that the plaintiffs in error should be charged with any part of the expenses of the litigation, and, under our construction of the testimony relating thereto, his claim that the plaintiffs in error were to represent him in the suit afterwards brought against him in the district court of Kaufman county is not supported by any testimony. While a contract between an attorney and client for the former's compensation, entered into during the existence of the relation, is not void, although presumptively invalid, the burden of showing fairness rests upon the attorney, yet the same principles of law apply as in other classes of contracts. The power of a court of equity to cancel a contract between an attorney and a client is limited to the duty of protecting the latter against the undue influence of the former. An original contract may be abrogated by mutual consent while the employment continues, and a new contract may be made whereby the rights, duties, and obligations of the parties are mutually changed; but, unless new duties are assumed by the counsel and the client secures additional advantages and fully understands his rights under the original agreement, as well as under the new contract, it is not binding upon him. But, where an attorney renders services clearly not contemplated as probable or necessary at the time of making the agreement, but made necessary by subsequent, unexpected, and unusual developments in the

progress of the cause, he is entitled to extra compensation on the ground that the original agreement did not cover the services performed. Coon v. Ewing (Tex. Civ. App.) 275 S. W. 481; Headley v. Good, 24 Tex. 232; Clarke v. Faver (Tex. Civ. App.) 40 S. W. 1009; Bishop v. Vaughan, 186 Mo. App. 479, 172 S. W. 644; Barcus v. Gates (C. C.) 130 F. 364; Mahoney v. Bergin, 41 Cal. 423; Cloud v. Taliaferro County, 138 Ga. 214, 74 S. E. 1074; Gorrell v. Payson, 170 Ill. 213, 48 N. E. 433; Bond v. Sandford, 134 Mo. App. 477, 114 S. W. 570; Comstock v. Flower, 109 Mo. App. 275, 84 S. W. 207; Haines v. Wilson, 85 S. C. 338, 67 S. E. 311; Isham v. Parker, 3 Wash. 755, 29 P. 835.

[10] The question of quantum meritum is not involved except in so far as it might throw light upon the question whether the contract represented by the instrument in writing was unfair and unconscionable. The latter question having been determined against the contention of defendants in error, the record conclusively showing that certain expenses were paid by the original plaintiffs as well as certain services were rendered by them in connection with Angus G. Wynne and Toddie L. Wynne after the making of the original contract with the defendant in error I. D. Buie, the adequacy of the consideration under the pleadings and facts found by the jury for the execution and delivery of the instrument in writing is not before us. The rights of plaintiffs in error, as well as the rights of Angus G. Wynne and Toddie L. Wynne, are measured by the terms of the written contract, where the transaction is otherwise shown to be valid, as the record in this case clearly shows it to be. Moreover, the record discloses that the bankrupt proceeding, to conduct which the plaintiffs in error were employed by the defendant in error Buie was a voluntary one, as contradistinguished from an involuntary proceeding in bankruptcy. This mode is a quicker and less expensive one, and less likely to lead to delay and expense of litigation. In this proceeding the form of petition by a debtor is very simple; all that is necessary to state being that the petitioner owed debts which he is unable to pay and desires to take the benefit of the Bankruptcy Act (U. S. Comp. St. §§ 9585–9656), together with the recitals as to residence. domicile, place of business, and such other jurisdictional matters as are necessary to confer jurisdiction upon the particular court in which the proceeding is commenced. With this petition must be filed a schedule of the petitioner's assets and liabilities. Incidentally this schedule must contain a statement of the exempt property belonging to the petitioner, but the Bankruptcy Act provides that it shall not affect the allowance to bankrupts of the exemptions which are prescribed by the laws in force at the time of the filing of the petition in the state where he had his domicile for the six months or the greater portion thereof immediately preceding the filing of the petition.

Although the state law governs with respect to the rights to exemption, the Bankruptcy Act governs with respect to the time and manner of claiming exemptions and the method of ascertaining the value of the property claimed as exempt and of setting apart the exemptions, and the bankrupt's right to exemption can be made available only in the manner prescribed by such act. While it is true that a bankrupt should make his claim for the exemptions to which he is entitled in his schedule proper, yet it is also true that his failure through oversight to make a claim to a homestead or exemption in the schedule does not deprive him of the exemption where timely application is otherwise made to the court of bankruptcy, and he may be permitted to amend his schedule or his application may be treated as an amendment although not in such form; provided, of course, that such claim for exemptions is made before the bankrupt is discharged. When a petition in a voluntary bankruptcy has been filed and assets of the estate belonging to the creditors is shown, a trustee is appointed to take charge of these assets, but the power of control of the trustee does not extend over the exempt property. This character of property is never within the control of the trustee. After a trustee shall have been appointed and qualified and has taken possession of the assets of the bankrupt, the preliminary proceedings are before a referee. After due notice to the creditors and after the referee has passed upon such matters as come within his jurisdiction, the bankrupt court finally receives the report of the referee and makes such orders as to it seems proper and just in the premises, among which is the usual one where exemptions are claimed to set aside these exemptions, which, as we have seen, form no part of the property lawfully within the control of the trustee or within the jurisdiction of the referee except to the extent heretofore stated.

The record in this case shows that a trustee was appointed and did take charge of the assets belonging to the estate of the petitioner, and did sell the same and distribute it among the creditors. Except the right to contest the claims of those claiming to be creditors, the petitioner in this character of proceeding has no interest and no right to interfere. By his petition he had voluntarily surrendered all of his property to be administered by the bankrupt court for the benefit of his creditors, and, as heretofore said, he had incidentally indicated certain property as his homestead, which, however, did not come within the province of the bankrupt court through any of its agencies to disturb. After these assets belonging to his creditors

had been delivered into the possession of the agents of the bankrupt court and certain proceedings mentioned in the Bankruptcy Act had been had, and a certain time had elapsed, it was then the right of the petitioner to ask and receive from the bankrupt court his discharge from further liability on the debts due his creditors. This is the usual proceeding in a case like that presented by the record in this case, and it may reasonably be inferred that the duties of the plaintiffs in error under the contract made with the defendant in error I. D. Buie were circumscribed thereby and were within the contemplation of the parties at the time the contract was made.

But the record further discloses that the trustee as well as the referee erroneously concluded that certain lands belonging to the defendants in error were proper assets of the estate of the bankrupt and liable to be appropriated to the payment of his debts for the benefit of his creditors, and commenced legal proceedings in the federal District Court where the petition had been filed, the successful termination of which would have controverted the statement of the defendants in error that these lands constituted a part of their homestead. When this proceeding commenced, it became necessary for the defendants in error, one of whom was not a party to the bankrupt proceedings, to interpose their objections by presenting an issue to the federal District Court and supporting that issue with testimony. To do these things, it appeared necessary to the defendants in error to employ counsel, which it is shown they did by employing the plaintiffs in error as well as the law firm of Wynne & Wynne. These lawyers proceeded to discharge the duties of their employment, and, as the issues thus presented had been determined in the federal District Court in favor of defendants in error, an appeal was taken to the Circuit Court of Appeals at New Orleans, and, after that court had affirmed the judgment of the District Court, an appeal was then taken to the Supreme Court of the United States at Washington. In all of these proceedings the original plaintiffs not only paid the expenses incident thereto, excluding court costs, but appeared as counsel for the defendants in error under the express contract made with them.

[11-13] A written contract between competent parties, which is free from fraud, accident, or mistake, must be construed by the courts in accordance with the intention of the parties thereto and consistent with its terms, since the intention of the parties fixes its character and their liability thereunder. The lawful intent of the parties must be looked to and must govern. Smith v. Brown, 66 Tex. 545, 1 S. W 573; Daniel v. Henry, 30 Tex. 27; Ragsdale v. Robinson, 48 Tex. 398. A written contract must control the rights of the parties in preference to a parol one. Miller v. Lacy, 33 Tex. 353. The court may look to circumstances under which a contract was made to ascertain its true construction and intent of the parties, and the construction placed upon the contract by the parties themselves as evidenced by their conduct in relation thereto over a period of several months, as in this case, is a circumstance of strong probative force. According to the terms of the original contract made between the plaintiffs in error and the defendant I. D. Buie, the latter agreed to pay the former $50, and according to the terms of the original contract between Angus G. Wynne and Toddie L. Wynne and the defendant in error, I. D. Buie, the latter agreed to pay the former $50. Neither of these sums of money was paid in money. I. D. Buie never offered to pay either of these parties this money until he filed his answer in this partition suit, nor did either of these parties ever demand of I. D. Buie such payment in money. In the meantime, the contest involving the homestead of the defendants in error progressed during several months through the courts of original, intermediate, and final jurisdiction to a successful termination. This conduct of the parties points unerringly to the fact that the previous oral contracts were merged in the written instrument by virtue of which the original plaintiffs based their right to a partition of the lands described therein, and during which time, according to the finding of fact by the trial court, the original plaintiffs had bestowed benefits upon the defendants in error of the value of $750 in excess of the amounts which I. D. Buie had contracted to pay them. We think these circumstances under which the contract was made clearly indicate what its true construction should be and what the true intent of the parties was. Smith v. Crosby, 47 Tex. 129; Watrous v. McKie, 54 Tex. 71; Astugueville v. Loustaunau, 61 Tex. 237; House v. Faulkner, 61 Tex. 311. We are therefore of the opinion there was sufficient consideration for the execution and delivery of the instrument by virtue of which the original plaintiffs sought to secure a partition of the lands described therein.

We therefore recommend that the judgments of the Court of Civil Appeals and the district court be reversed, and that this case be remanded to the district court, with instructions that the plaintiffs in error be granted the same relief against the defendants in error as was granted to the original plaintiffs, Angus G. Wynne and Toddie L. Wynne, and that commissioners be appointed with instructions to divide the land between the parties in accordance with such judgment. We further recommend that the plaintiffs in error recover of the defendants in error all costs incurred in the Supreme Court, Court of Civil Appeals, and the District Court.

CURETON, C. J. Judgment of the Court of Civil Appeals and district court both reversed, and cause remanded to the district court, with instructions, as recommended by the Commission of Appeals.

We approve the holding of the Commission of Appeals on the questions discussed in its opinion.