### GILL et al. v. SMITH.

No. 12169.

Court of Civil Appeals of Texas.
Galveston.

July 13, 1950.

Rehearing Denied Oct. 12, 1950.

W. J. Knight, of Houston, for Ned Gill.

Randolph & Butler, of Houston, for Ned Gill Bldg. Corp.

Gaius G. Gannon, of Houston, for appellee.

CODY, Justice.

Appellee sued appellants, Ned Gill and the Ned Gill Building Corporation, jointly and severally, in two alternative counts. In the first count, appellee alleged the conversion by appellants of a written contract, dated May 6, 1946, which purported to obligate said Building Corporation in the total sum of $27,800. In that connection, appellee alleged that he delivered said contract to appellant Ned Gill as collateral security for the payment of his certain promissory note for the principal sum of $5,000, payable to the order of Ned Gill on March 19, 1947; that, prior to the due date of said note, the said Gill had notified appellee that he need not pay the note when it matured, but could take his time; but that thereafter the said Gill surreptitiously undertook to foreclose the said contract of May 6, 1946, on April 26, 1947; that as soon as appellee learned of said purported foreclosure, he tendered payment of said note in full, which was refused. Appellee sought in his first count to recover as actual damages the value of the contract as of the date of its alleged conversion; appellee also sought to recover punitive damages in the sum of $20,000. In his second count, appellee sought to enforce the payment of the said contract of May 6, 1946.

Appellants separately filed answers, and were represented by different lawyers. Appellant Ned Gill's answer was to the effect:

That the contract of May 6, 1946, was illegal, void and unenforceable because (1) it was given by the Building Corporation for the services of appellee, in effecting the sale of the Oil and Gas Building in Houston by the Continental Oil Company to the Building Corporation, without having theretofore obtained a license to act as a real estate dealer under the laws of the State, and that appellee acted in defiance of the Real Estate Dealers Act, and did not come within any of the exceptions thereof; and (2) the contract was without any consideration in that it was executed after the sale without any prior agreement in writing obligating the Building Corporation to pay appellee the sum specified therein; and (3) the contract was ultra vires with respect to the Building Corporation; and (4), since the contract was insufficient to create any enforceable legal rights in appellee, he could sustain no injury by reason of the acts complained of.

The pleadings of the Building Corporation set up substantially the same matters as those of Ned Gill.

Before the court submitted the case to the jury, upon eight special issues, and after the coming in of the verdict, each of the appellants seasonably moved for directed verdicts, and for judgment notwithstanding the verdict, and for judgment upon the answer to special issue No. 3, and that the jury's answer to certain special issues be disregarded. Each appellant also urged special exceptions to the court's charge; and severally requested specially requested special issues which were refused.

After verdict, appellee elected to stand upon the first count of his petition, and dismissed the second count. The court rendered judgment for appellee upon the verdict for the sum of $29,150, which sum was made up of an award of punitive damages in the sum of $10,000, and the remainder being awarded as actual damages.

Before giving such portions of the court's charge as must be considered upon the appeal, it will be helpful in understanding the charge, and the objections raised against it, and the answers of the jury, to note:

(1) That on February 22, 1946, a written contract for the sale by the Continental Oil Company of the Oil and Gas Building, in Houston, Texas, subject to title examination and delivery of good title, to the Ned Gill Building Corporation, was entered into between said Oil Company and said Building Corporation, for the sum of $1,389,642.-32, which contract was consummated prior to the contract of May 6, 1946, heretofore referred to.

(2) It is the position of appellee, who had obtained no license as a real estate dealer

under the provisions of the Real Estate Dealers Act, Vernon's Texas Civil Statutes, Article 6573a, that he and Ned Gill entered upon the transaction to acquire the ownership of said property as joint adventurers, in which transaction he contributed his services, and that when the ownership of the property was taken in the name of the Ned Gill Building Corporation, the interest therein which he had acquired as a joint adventurer, he surrendered as the consideration moving from him for the written contract with the Ned Gill Building Corporation, under date of May 6, 1946.

(3) The contract of May 6, 1946, is in the form of the following letter, duly addressed to appellee, and bearing a notation of his acceptance and approval:

"Dear Mr. Smith:

"This confirms the agreement made between you and Ned Gill Building Corporation that Ned Gill Building Corporation has obligated itself to pay you the sum of $27,-800.00, which is to be paid to you if, as and when collected from the gross receipts from rental from the property known and described as Block 258, in the City of Houston, S.S.B.B., Harris County, Texas.

"Beginning on January 1, 1947, you shall be entitled to receive 3% of the gross rental received by Ned Gill Building Corporation upon said land and improvements located thereon, which sums shall be payable to you monthly not later than fifteen days after the month in which said sum shall be collected. Said 3% of the gross rental shall continue to be paid from month to month and from time to time as said rentals are collected until you shall have received the full sum of $27,800.00. It is understood and agreed that Ned Gill Building Corporation shall have no obligation to pay said sum except from said rentals above specified, if, as and when collected.

"It is agreed, however, that should said Ned Gill Building Corporation sell said property, then and in that event the balance of said obligation then remaining unpaid shall become due and payable and shall be paid within thirty days after the completion of any such sale.

"Provided this correctly sets out our agreement, please execute and return two copies of this agreement for our files.

"Yours very truly,
"Ned Gill Building Corporation
"By (Signed) Ned Gill
"Attested:
"Accepted and Approved:
"(Signed) Clayton N. Smith"

(4) The collateral assignment of the contract of May 6, 1946, to Ned Gill by appellee contained full and ample authority to foreclose without notice, etc., and contained the following language characterizing the contract of May 6, 1946, as a "commission":

"Commission contract dated May 6, 1946, between Ned Gill Building Corporation and Clayton N. Smith providing for payment to Smith 3% of gross rentals on Block 258, S.S.B.B., Harris County, Texas, beginning January 1, 1947."

Coming now to the court's charge, the jury found:

Special Issue No. 1: That in buying in the contract dated May 6, 1946, Ned Gill was acting in part on behalf and for the benefit of the Building Corporation.

Special Issue No. 2: That appellee entered upon the transaction, which resulted in the purchase by the Building Corporation of the property here involved, as a joint adventurer with Ned Gill or the Building Corporation. In connection with this special issue, the jury was instructed that a "joint adventure" is "a special combination, express or implied, of two or more persons where in some specific venture a profit or benefit is jointly sought without any actual partnership. A joint adventure is a special combination of persons in the nature of a partnership engaged in the joint prosecution of a particular transaction for mutual benefit or profit. The parties to a 'joint adventure' are 'joint adventurers'."

Special Issue No. 3: "Do you find from a preponderance of the evidence that the instrument" (of May 6, 1946) "was accepted by Clayton N. Smith in lieu of a prior promise made him by Ned Gill, acting either personally or on behalf of Ned Gill Building Corporation, that he, Clayton N. Smith,

would be paid $27,800 in cash for his contribution to the transaction which resulted in the purchase by Ned Gill Building Corporation from Continental Oil Company of Block 258, S.S.B.B., Houston, Harris County, Texas." Answered: "We do."

Special Issue No. 4: "Do you find from a preponderance of the evidence that the contract of the plaintiff Clayton N. Smith in respect to negotiating, attempting to bring about, or in actually bringing about the purchase" (of the property from the Continental Oil Company by the Building Corporation) "was as a real estate dealer as that term is defined to you in this charge?" Answered: "We do not."

Special Issue No. 5: That Ned Gill did not use ordinary diligence in undertaking to inform appellee of his intention to exercise whatever rights he had under the collateral assignment agreement.

Appellant Ned Gill predicates his appeal upon 15 points; and appellant Building Corporation predicates its appeal upon 18 points.

If any of the following points, presented separately by the appellants, are well founded, the judgment must be reversed and rendered:

A. The contract of May 6, 1946, was illegal, void and unenforceable.

B. The error of the court in refusing to grant the motion to disregard certain findings of the jury, and render judgment for appellants, respectively, on the verdict in answer to Special Issue No. 3.

Appellant Ned Gill's fourth point is in effect, though different in form, the same as Point "A" above, and complains that the court did not direct a verdict because the only consideration for the contract of May 6, 1946, was services in effecting a sale of the property, which services were performed without any agreement in writing.

Appellant Building Corporation complains of any judgment against it for the alleged conversion of the contract of May 6, 1946.

Appellant Building Corporation complains of failure to grant the motion for judgment notwithstanding the verdict, on the ground that the contract of May 6, 1946, was executed in substitution for a prior oral agreement entered into in contemplation of or in consideration for services rendered, in violation of the Real Estate Dealers License Act.

The other points refer to matters of procedure which, if well founded, would require a reversal and remand, and will hereafter be referred to.

Appellee presents counterpoints, and cross-points.

The principal question in this case is whether the contract of May 6, 1946 is illegal or unenforceable. There is nothing upon its face to show that it was given as a commission, or was illegal or unenforceable in the hands of appellee. In other words, the burden of proof rested upon appellants to establish their affirmative defense that the contract was given under circumstances which rendered it illegal or unenforceable.

The Real Estate Dealers License Act, being Article 6573a, Vernon's Annotated Civil Statutes, became effective September 20, 1939, and since it was not amended thereafter until 1949, we are here concerned with the Act as it became effective September 20, 1939. By force of Section 4 thereof, any one act set out in Section 2, Subdivision (a), "when performed for another or others for compensation or valuable consideration or who with the intention or in the expectation or upon the promise of receiving or collecting compensation shall constitute a person or company performing, offering or attempting to perform such act or acts, a real estate dealer or a real estate salesman within the meaning of this Act."

Subdivision (a) of Section 2 of the Act is quite lengthy, and is itself subdivided into three subsections. Subsection (1) of said Subdivision (a) reads in part: "The term 'Real Estate Dealer' shall include every person or company, other than a salesman, and licensed and registered attorneys, who for another or others for compensation or other valuable consideration, or who with the intention or in the expectation or upon the promise of receiving or collecting compensation or other valuable consideration, lists for sale, sells, * * *, buys, * * *,

or offers, or attempts, or agrees to negotiate a sale, * * *, purchase, * * * of an estate or interest in real estate, * *, or negotiates * * * or agrees to negotiate a loan, secured or to be secured by mortgage or other incumbrance upon or transfer of real estate; * * * or who * * * holds * * * himself * * * out as engaged in the business of selling, * * *, buying, * * * real estate, or assists * * * in the procuring of prospects, or the negotiation or closing of any transaction which does or is calculated to result in the sale * * * of any real estate * * *."

The purpose of the Real Estate Dealers Act in regulating the real estate business was to eliminate or reduce fraud in the interest of the public. The Act does not touch, for instance, the case of where two individuals, acting as principals, purchase real estate to sell and divide the profits, even though one of the parties only contributes his services to the joint enterprise. The case of Nichols v. Anderson, Tex.Civ. App., 164 S.W.2d 268 dealt with facts which occurred after Article 6573a became effective. In remanding the case for a new trial, the Court, 164 S.W.2d at page 271, said " * * * the weight of authority is to the effect that a contract for joint adventure in the purchase and sale of real estate and division of the profits is not within a statute making unenforcible every agreement or contract for the sale of real estate which is not in writing, so as to defeat a suit for accounting of profits. Hoge v. George, 27 Wyo. 423, 200 P. 96, 18 A.L.R. 469; * *" etc., (citing numerous authorities).

The following evidence is representative of the strongest showing made in the record from which a contract in fact could be implied: it is to be regretted that, due to its indefinite character, so much evidence has to be here set forth:

That appellee and Gill were friends, and appellee was intimately acquainted with close kinsmen of Gill. That in the year 1945, Gill conceived the plan of erecting an office building in Houston, and wished to get long-time contracts from prospective tenants engaged in the oil business, as a basis for financing the construction of the building. That he took the matter up with appellee, who had been engaged in the oil business for years, and knew the coming men in the business, as well as those who had arrived, and interested appellee in his plan. He told appellee that a regular real estate dealer would not serve as it required appellee's knowledge, friends, and contacts. He inquired of appellee what he was making. Gill painted a glowing picture of what appellee's future would be if he would become associated with the Ned Gill interests. That if the building project was put over, appellee could expect a lifetime association and realize earnings that would make his earnings in the oil business seem small. That appellee investigated Gill's plans, particularly with respect to the proper location, and investigated the probability of getting tenants signed up for the proposed location, and concluded, and so reported, that the building at the proposed location was not practical.

That between the 15th and 20th of January, 1946, the late Mr. Moran, President of the Continental Oil Company, had appellee come to see him. He told appellee that his Company did not wish to incur friction with the tenants of its building, which were also engaged in the oil business, and dealt with the Company, and proposed that appellee form a syndicate to buy the Oil and Gas Building. That the price would be $1,389,642.32, net, and no commission would be paid.

That appellee told Gill of Mr. Moran's offer in the exact language it was made, including the information as to the price, and that no commission would be paid, and the suggestion that appellee form a syndicate to buy the building. That Mr. Gill then said "We can handle that deal". We give the following questions asked appellee and his answers:

"Q. 'We', was that the expression he used? A. Yes, sir.

"Q. To whom was he referring * *? A. At that time, who Mr. Gill's other associates would be, he didn't know, nor exactly how he could arrange his financing and other things, and I went on the understanding we could handle the deal * * *.

"Q. What are the facts * * * as indicated to you with reference to whether in transactions leading up to and including the purchase of the Continental Oil Company property * * * Mr. Gill was acting for his own individual account or in the capacity as President and Chief Executive Officer of the Ned Gill Building Corporation. A. * * * I don't even think I had knowledge of the existence of the Ned Gill Building Corporation until about the time the earnest money was put up and the deal was in its final stages. * * *

"Q. Now it is in evidence here that on May 6, 1946, the Ned Gill Building Corporation gave you its note * * * obligating itself to pay you the total sum of $27,800. Will you please detail the events and considerations which lead up to the making of that contract (i.e., note) * * *. A. Sometime in February, about the time the earnest money was put up, and the sale was about to go through, I naturally inquired as to my participation and the extent and so on and so forth.

"Q. Who did you inquire of? A. Of Mr. Gill himself, I had previously been led to believe, by Mr. Gill, that my future income, and that of my family, would be far in excess of the sum I might hope to make out of the oil business. He proceeded to explain to me that, because of tax positions and other things, that I could not have an interest in the building.

"Q. (Was this) before or after the purchase of the building? At what date? A. * * * it was in February when the negotiations were pretty hot and heavy and when it would have been very embarrassing to me or the Continental to reverse my position or any other thing * * *.

"Q. * * * Did you at any time, and if so when, have any conversations with Mr. Gill as to your status in the transaction * * *? A. Mr. Gannon, I was very, very fortunate. at being associated with the son of a lifelong and the nephew of two lifelong friends, and from conversations too numerous to mention here, I felt that I had a very rosy future, associated with Ned Gill, a future that would compensate me in a very, very satisfactory manner;

and when Mr. Gill told me, he said 'I am just going to give you two per cent cash out of the deal, and I will give it to you when the deal is closed,' which was $27,800, and there was nothing for me to do." Again, "A. * * * There was no bitterness on my part at not having the participation, but I accepted my friend's explanation of his reasons, and his promise to make it up to me in other ways. * * *

"Q. And in accepting cash and stepping aside as one of the owners, dropping and failing to press any claim of ownership in the building, did you rely upon the glowing statements made to you by Mr. Gill in respect to your future? A. I certainly did, sir."

█ A joint adventure is a special combination of persons in the nature of a partnership engaged in joint prosecution of a particular transaction for mutual benefit or profit. Holcombe v. Lorino, 124 Tex. 446, 79 S.W.2d 307, 319. Therefore, it must be based upon a contract, express or implied. The foregoing evidence is clearly not sufficient to establish or prove an express contract by which appellee and Gill, acting for himself or for the Building Corporation, bound themselves to buy the building, Gill to furnish the financing, and appellee to contribute his services in negotiating the purchase. Neither is the evidence sufficient to support a finding of a contract implied in fact. Appellee's evidence affirmatively shows that the share which appellee should have was a matter to be agreed upon, and while a glowing future for appellee in his association with Gill was painted, there was never any specific share agreed upon. In the last phase of the transaction, when appellee asked that the agreement specify what his interest should be in the building, Gill said that due to tax positions, etc., that appellee could have no share, but that he should be given two per cent cash on the purchase price, or $27,800. Appellee agreed to this, and it was later modified into the written agreement of May 6, 1946.

Under appellee's evidence, it was understood even down to the date that the earnest money contract was made that he was not to receive a commission from any

source. Had appellee declined to accept Gill's offer of $27,800, what would his rights have been? While he improvidently failed to exact an agreement as to what share he should receive, it can be inferred from the evidence there was an agreement for joint adventure in which his share was to later be determined. The only missing element to an agreement for joint adventure to be implied in fact, was the amount of his share. Under his evidence, he was not a volunteer; he was not dealing for Gill; he was dealing as a principal for his own account, as much as though he had an enforceable contract for a specified interest. We know of no reason why, if appellee had declined Gill's offer of $27,800, appellee would not have been entitled to the remedy of quasi contract, to recover the value of his services, of which Gill availed himself, to prevent the unjust enrichment of Gill or the Building Corporation, at appellee's expense. Though it did not term it so, the Supreme Court applied the remedy of quasi contract, contract by construction of law, in Goodwin v. Gunter, 109 Tex. 56, 60, 185 S.W. 295, and in Hancock v. Stacy, 103 Tex. 219, 125 S.W. 884, where the principle was called "a rule of fairness and right". [109 Tex. 60, 185 S.W. 296.]

■ Article 6573a has made a sweeping change in the common law, but there is nothing in it to abolish the application of the "rule of fairness and right" where a person is not acting as a real estate dealer, but is purchasing property for his own account. It is only on that view that it can be held that the right of joint adventure to purchase real estate has not been abolished, and that a joint adventure to buy real estate and divide the profits is still permissible in which one of the adventurers contributes no property, other than in the form of services. Since we conclude that appellee had such an inchoate interest in the transaction of the purchase of the building as would be protected from appropriation by Gill and the Building Corporation on the principle of unjust enrichment, we must hold that there is nothing in Article 6573a that would prevent appellee from making an express contract to protect his inchoate right, as was done here, instead of resorting to the remedy of quasi contract.

■ Here the contract of May 6, 1946, imported a lawful consideration, and the burden was on appellants to prove their affirmative defense that the contract was illegal and unenforceable. See Wright v. Robert & St. John Motor Co., 122 Tex. 278, 58 S.W.2d 67, 69 (Opinion adopted by the Supreme Court); Gieb v. Goebel Brewing Co., Tex.Civ.App., 176 S.W.2d 975, 977. The mere introduction of the contract in evidence made out a prima facie case that it was enforceable. Special issue No. 2 found that appellee "entered" upon the transaction as a joint adventurer with Gill or the Building Corporation. While the evidence was insufficient to support a finding of a contract for joint adventure, appellee is not here suing to enforce such a contract, i.e., is not suing for an interest in the building. The evidence is sufficient to support the jury finding that the parties "entered" upon a joint adventure, and pursued it until it was abandoned, and appellee was given the contract sued on.

Appellants complain that the trial court failed to submit special issues which affirmatively submitted its defense. We have concluded that special issue No. 4, which submitted the issue of whether appellee was a real estate dealer in the transaction as the term is defined in the charge, was an affirmative and sufficient submission of appellee's defense. We consider the special issues requested by appellants as not being ultimate issues, and that no judgment could be entered upon any answers thereto.

■ We consider that the evidence was sufficient to show that Mr. Gill was an alter ego of the Building Corporation, and that the jury was authorized in finding that transactions between him and the Building Corporation were bookkeeping transactions, and that the jury was authorized by the evidence in answering special issue No. 1 in the affirmative.

We have carefully examined all of the points presented by each appellant, and consider that they present no reversible error. The inordinate length to which it has

been necessary to extend this opinion, and the fact that the principal point in the case has been fully covered, causes us to forego the discussion of the procedural matters complained of, none of which we think present reversible error.

Even if appellee had not preserved his cross-points contingently, we doubt if we would have jurisdiction to consider them, as the trial was to the jury, and he filed no motion for a new trial. We have not found where this point has been determined by the Supreme Court.

Judgment of the court is affirmed.