**GILL et al. v. RANDOLPH et al.**

No. 12612.

Court of Civil Appeals of Texas.

Galveston.

May 27, 1954.

On Filing of Remittitur June 10, 1954.

Rehearing Denied June 24, 1954.

1. Chapter 2, art. 1, p. 3, Acts 53rd Leg. 1st C.S. (1954).

Cutrer & Cook, Lewis W. Cutrer, and W. Lawrence Cook, Jr., Houston, for appellant Ned Gill.

Kelley & Ryan, and C. O. Ryan, Houston, for appellant Ned Gill Bldg. Corp.

Fred W. Moore, Houston, for appellees.

CODY, Justice.

This was an action by Messers. Randolph and Butler, attorneys, to recover from Ned Gill and the Ned Gill Building Corporation, hereafter called the Corporation, jointly and severally, attorneys' fees alleged to have been earned by plaintiffs in connection with a law suit brought in the name of the Corporation against the Continental Oil Company, hereafter called the Continental, and against the Ramada Club, a social club of Houston. Plaintiffs brought this action primarily in quantum meruit and in the alternative brought suit to recover upon a written contract dated March 24, 1950 but executed on March 30, 1950, as modified by an oral agreement alleged to have been entered into on April 7, 1950 between Mr. Gill, acting for himself personally and for the corporation on the one hand, and Mr. Randolph, acting for himself and his partner, Mr. Butler, on the other.—At this point it is necessary to give the background of this action by plaintiffs to recover attorneys' fees from Mr. Gill and the Corporation for services rendered in the case of the Corporation v. the Continental and the Ramada Club. Mr. Gill, until all of the shares of stock in the Corporation were sold on September 29, 1950 to St. Michael's College Foundation for the sum of $2,708,500, was the majority stockholder in the Corporation and the balance of the stock was held by his wife and by his mother; and when his mother died he succeeded to the shares she had, which occurred of course before the sale of the stock to the aforesaid foundation. The Corporation purchased from the Continental Block 258, S.S.B.B., in the City of Houston, which was occupied in part by the Oil & Gas Building. There is a rather full statement relating to the purchase by the Corporation of said property in the case of Gill v. Smith, Tex.Civ. App., 233 S.W.2d 223. Mr. Randolph was of counsel for Mr. Gill and the Corporation in that litigation and we may state parenthetically here that we held in that case, in virtue of the jury finding, that Mr. Gill was the alter ego of the Corporation. But we here state that there was no such jury finding in the present case as would justify the holding in this case that Mr. Gill was the alter ego of the Corporation and without further reference to the contention of Randolph and Butler that Mr. Gill is the alter ego for the Corporation, such contention is hereby overruled and disposed of.

At the time the Corporation acquired the title to the aforesaid Oil & Gas Building property in 1946, the Continental took a lease on a portion of said building in its favor for a term of years with the option to renew for five more years at a rental of $2.10 per square foot per year. At the time of the aforesaid conveyance of said building to the Corporation, a portion thereof was also subject to a lease in favor of the Superior Oil Company for a term of years at approximately the same rental as that enjoyed by the Continental. Also at the time of said conveyance a portion of said building was subject to a lease in favor of the Ramada Club, which had five years still to run, with an option to renew for five more years. The rental contract of the Ramada Club provided for only about half as much rental per square foot per year as the rental contract of the Continental. Each of the aforesaid tenants held a floor or more of said building under rental contract. The Corporation was getting about twice the rental rate from its other tenants that it was getting from the

Continental. These cheap rental areas in the Oil & Gas Building were a handicap to selling the property or the stock of the Corporation.

Mr. Gill took up with Mr. Randolph his problem of the cheap rental areas in the Oil & Gas Building. Due to the form and substance of the assignment by the Continental to the Corporation of the lease held by the Ramada Club, the details of which need not be given, Mr. Randolph concluded that there was a fair chance of recovery by the Corporation from the Continental. He was employed to bring suit against the Continental and the Ramada Club, and the terms of the contract of employment were put into writing in a letter dated February 16, 1949, which provided for a guaranteed fee of $3,000 and for a contingent fee under circumstances not necessary to specify. A suit was accordingly brought in the State court against the Continental and the Ramada Club as for a declaratory judgment. The Continental removed the suit to the Federal court.

In due course the Continental brought a cross-action, or counterclaim, to cancel and set aside the conveyance from it to the Corporation of the Oil & Gas Building property. Thereupon Mr. Randolph, who by that time had formed a partnership with Mr. Butler, filed an amended pleading and in the first count thereof continued to seek a declaratory judgment and in the second count sought to oust the Continental from the Oil & Gas Building and to break its lease on the ground that the Continental was seeking to deny its landlord's title. Further and additional parties came into the suit. Under directions from Mr. Randolph the Corporation refused to accept the rent from the Continental which was tendered as it fell due. By the aforesaid written contract dated March 24, 1950, but which was executed by the Corporation and Randolph and Butler on March 30, 1950, a new and additional written contract for the attorneys' fees which should be paid for the services rendered in connection with the second count was entered into. A copy of that contract is hereto attached as Appendix A.

On April 7, 1950, during the progress of the trial of the Federal case a compromise settlement of it was agreed to by the parties to said suit and the same was dismissed with prejudice. By the terms of the compromise the lease to the Continental was recognized as being valid until March 15, 1956, with the option on the part of the Continental to renew its lease for an additional ten years, but at the rate of $3.60 per square foot per year. And, according to the pleadings and evidence of plaintiffs in the present case, it was orally agreed between Mr. Gill and Mr. Randolph that Randolph and Butler would accept the guaranteed fee of $3,000 for their services rendered in connection with the first count for the Corporation's pleading in the Federal court, which was paid, and that said appellees agreed to release their claim for any contingent fee under the contract of February 16, 1949. According to the further pleadings and evidence for the plaintiffs in this present suit, Mr. Gill and Mr. Randolph further orally agreed that the settlement of the Federal case had been made under the provisions of paragraph 8 of the contract executed March 30, 1950, and that the sum of $23,333.33 was the reasonable fee called for by the terms of the said contract of March 30, 1950; and that said parties further orally agreed that the same should be paid by Gill personally or by the Corporation as and when Gill sold the Oil & Gas Building property or the stock of the Corporation. And, that it was further orally agreed that if no such sale was made before March 15, 1956, then the sum of one-half of any additional rents over and above $2.10 per square foot per year thereafter collected by the Corporation for the Continental's space should be applied to the payment of aforesaid $23,-333.33.

Mr. Gill denied that he made any such oral agreement and modification of the contract of March 30, 1950, but as will hereafter be noted, the jury resolved this conflict in favor of plaintiffs. On Septem-

ber 29, 1950, as above indicated, the stock of the Corporation owned by Gill and wife was sold to St. Michael's College Foundation and an option was given to Mr. Gill to purchase that portion of the block not covered by the Oil & Gas Building. The evidence showed that $20,000 was paid in cash and the balance evidenced by the promissory note of the purchaser payable in monthly installments over a period of about twenty years. The note was secured by the aforesaid shares of stock. At the time of the trial the purchaser was some five months in default.

The court overruled the motions of the defendants, Ned Gill and the Corporation, for directed verdicts and for judgment notwithstanding the verdict, and the court also overruled objections and exceptions to the court's charge and submitted the case to the jury upon three special issues, which, as answered by the jury, were as follows:

No. 1. "Do you find from a preponderance of the evidence that the defendant Ned Gill after the settlement of the suit styled Ned Gill Building Corporation v. Continental Oil Company agreed to pay plaintiffs a fee in the sum of $23,333.33 when defendant Ned Gill sold the stock of the Building Corporation?" which was answered "Yes".

No. 2. "What sum of money, if any, do you find from a preponderance of the evidence to be a reasonable attorney's fee for legal services rendered by plaintiffs, Nowlin Randolph and William B. Butler, in the preparation, trial, and settlement of the suit styled Ned Gill Building Corporation v. Continental Oil Company?" which was answered "$24,150.00".

No. 3. "What sum of money, if any, do you find from a preponderance of the evidence to be a reasonable attorney's fee for the legal services performed by plaintiff's counsel, Fred W. Moore, for representing plaintiffs in the preparation and trial of this suit?" which was answered "$6,000.00".

Plaintiffs moved for judgment upon the answers to special issues Nos. 2 and 3 and

the court accordingly rendered judgment for them for $33,591.37.

Both Mr. Gill and the Corporation have appealed. Appellant Gill has predicated his appeal upon seven points. His Points Nos. 1 to 3, inclusive, present in substance that plaintiffs (hereafter called appellees) are, as a matter of law, not entitled to collect any attorneys' fees, (1) because the contract for said attorneys' fees was a written one between appellees and the Corporation and was contingent upon being collected and paid out of the increased rentals obtained for the Continental space after March 15, 1956, (2) because the contract of employment was solely with the Corporation, so that as a matter of law Gill could not be liable therefor, and (3) because the contract expressly provided that the Corporation was the "client".

■ We overrule appellant Gill's said points 1 to 3, inclusive. It was competent for the parties to agree that appellees should receive further and additional compensation for the professional services in connection with the second count of the Corporation's petition filed in the Federal court. The cross-action of the Continental resulted in bringing in new issues and new parties and opened the way for the Corporation to assert the matters set forth in the second count of its petition. See Cooley v. Buie, Tex.Com.App., 291 S.W. 876, and authorities there cited.

■ Indeed, it is even competent for an attorney to recover an additional sum for his professional services in quantum meruit where he has rendered services which were not contemplated by the terms of his contract of employment. Clarke v. Faver, Tex.Civ.App., 40 S.W. 1009. But it requires no citation of authority to establish that a party cannot recover in quantum meruit where he has an express contract.

Gill did not question the right of appellees to recover the additional compensation provided for in the contract of March 30, 1950. Indeed, he insists that the appellees

have that right, but that the same is limited in the said written contract. And he further points out that the contract of assignment of the stock to the aforesaid Foundation undertakes to protect the right of appellees which Gill strongly insists is limited by the terms of the aforesaid written contract. However, it was competent for the parties to modify the written contract in the manner in which appellees contend the same was here modified. See Rhoads Drilling Co. v. Allred, 123 Tex. 229, 244, 70 S.W.2d 576; Pinson v. Odom, Tex.Civ.App., 250 S.W.2d 609; 17 C.J.S., Contracts, § 377, pp. 865, 867.

In this connection we have duly considered the affidavit filed of record by Mr. Randolph on September 25, 1950, by which he gave notice that his law firm had been assigned a portion of the rents from a part of the Oil & Gas Building by the contract dated March 24, 1950. Said affidavit was filed for record some four days before Mr. Gill sold his stock. And said notice was not inconsistent with appellees' claim under the contract of March 30, 1950, as modified by the oral agreement of April 7, 1950. What has just been said applies with equal force to the letter written on December 14, 1950, by appellees, addressed to Gill and to the Corporation, acknowledging payment of all obligations due from them to appellees which arose after April 7, 1950. The letter closed with this language: "This does not affect and there is excepted from this letter the obligations for services heretofore rendered in connection with the Second Count of the case of Ned Gill Building Corporation v. Continental Oil Company in the United States District Court, which case was terminated by final judgment rendered April 7, 1950. Such obligation being evidenced by a written contract between you and us dated March 24, 1950."

The jury accepted the version of appellees as to the modification of the written contract of March 24, 1950, by an oral agreement of April 7, 1950, as is evidenced by the answer to special issue No. 1.

However, the court did, in our opinion, err in rendering judgment upon special issue No. 2, as answered by the jury, and should have, instead, rendered judgment upon the express agreement to pay appellees the sum of $23,333.33. Accordingly the judgment should be modified so as to be based upon the sum of $23,333.33, together with interest thereon at the rate of 6% per annum from the date of September 29, 1950, when the stock was sold. Furthermore, the agreement of Mr. Gill to pay said sum upon the sale of his stock in the Corporation, was solely for his benefit, and could not have benefited the Corporation in any way, and said contract could not have been binding upon the Corporation. The judgment, insofar as it was rendered against the Corporation, was, we believe, in error.

Appellant Gill complains in his fourth and fifth points of the submission of special issue No. 2; and complains in his sixth point of the evidence admitted by the court as to what was a reasonable fee. Since we have ruled that judgment should have been rendered for the sum agreed upon, these points are not now relevant. Said appellant Gill's seventh point complains of the award by the court, upon the jury's verdict, of attorneys' fees in the sum of $6,000. Said appellant makes no complaint that appellees did not fully comply with the provisions of R.C.S. Art. 2226, but asserts that appellees failed to establish that they were entitled to recover any sum for which they have brought their suit at this time, and so are not entitled to recover any attorneys' fees for bringing their suit. We overrule said point, that is, we overrule said point provided appellees file the remittitur hereinafter indicated.

It follows from what we have held hereinabove that appellant Corporation is entitled to have so much of the judgment as was rendered against it here reversed and rendered that appellees shall not recover as against it, and it is accordingly ordered.

The judgment rendered against appellant Gill will be reversed and remanded unless appellees file a remittitur within 15 days from this date in the sum of $925.37, being the difference between the judgment, inso-

far as it is based on $24,150 with interest thereon, etc., and what it should be when based upon $23,333.33 with interest thereon at the rate of 6% per annum from September 29, 1950, to February 16, 1953, the date of the trial court judgment. But if said $925.37 remittitur is so filed, then the judgment will be reformed and affirmed as to appellant Gill so that appellees shall recover from him personally the total sum of $32,666 with interest thereon at the legal rate from the date of the trial court judgment. Further, in the event such remittitur is so filed the trial court costs will be taxed against the appellant Gill, and costs of appeal will be taxed against the appellees.

GRAVES, J., dissenting.

Appendix "A"

March 24, 1950

The State of Texas:
County of Harris:

Ned Gill Building Corporation, the client, and Randolph & Butler, the attorneys, agree:

1. The attorneys' fee in the Second Count of Ned Gill Building Corporation v. Continental Oil Company et al. shall be entirely contingent, and no fee shall be paid unless possession of the premises now occupied by Continental Oil Company in the Oil & Gas Building is secured or unless a compromise is effected.

2. The attorneys' fee in connection with the Second Count of the amended complaint shall be wholly contingent and shall be $35,000. If possession of the premises which Continental now occupies is secured either by final judgment or by compromise, then the sum of $35,000 shall be paid to the attorneys. This money shall be payable as follows: First, by payment to the attorneys of one-half of the amount paid by Continental as liquidated damages for occupying the space in the Oil & Gas Building after August 1, 1949; and second, if that sum is not sufficient to pay the said fee, then by the payment to the attorneys of one-half of any rent or rents received from any tenant or tenants of all or any part or parts of the space now occupied by Continental in the Oil & Gas Building, which are in excess of rents paid by Continental for said space or spaces at the rates in effect before August 1, 1949.

3. If a compromise of the Second Count is effected by which Continental continues to occupy space in the Oil & Gas Building then the fee shall be $35,000 if under such compromise Continental pays an average rate of 37½¢ or more per square foot per month for the space it continues to occupy; this $35,000 shall be payable out of one-half of the increase in rent, that is, out of one-half of the difference (upon a square foot basis) between the rent paid by Continental prior to August 1, 1949 and the rent paid by Continental under said compromise. But if under said compromise Continental continues to occupy space in the building at a rate less than 37½¢ per square foot per month, then the fee shall be only $23,333.33, payable in the same way as the $35,000 fee would be paid if the rate were 37½¢ or more per square foot per month.

4. The contingent fee is not payable unless money is actually received from judgment or settlement. It is, however, payable out of the first moneys received because of judgment or settlement, and such first moneys received are set aside to the attorneys for payment of said fee until the full amount of said fee has been paid. However, in computing such fee and in making such payments, the client shall be first entitled to reimburse itself for court costs and other expenses incurred in prosecuting this lawsuit, but such other expenses do not include time spent by any person connected with or in the employ of the client in assisting in any way in the prosecution of said suit.

5. All court costs shall be promptly paid by the client. Other expenditures to be made or incurred by the attorneys in the prosecution of the case must first be authorized by the client in writing.

6. Either party shall be privileged to terminate this contract at any time. If

it is so terminated, all authorized expenses will be paid by the client. In the event of such termination, the attorneys shall receive such proportion of the contingent fee as may have been earned, such payment of contingent fee to be made only if money is thereafter collected by the client.

7. The fee for the Second Count and the fee for the First Count (as set out in contract between the client and Nowlin Randolph, dated February 16, 1949) constitute the full amount of attorneys' fees in said case, and no additional fee is to be paid the attorneys for their services in defending the counterclaim filed by Continental; and the money set aside to the attorneys in these two contracts shall constitute their full compensation in said case.

8. If compromise or settlement of said case is reached in some way not specifically provided for in this contract or in the contract of February 16, 1949, then the attorneys shall be paid a reasonable fee for their services.

Signed in duplicate originals this 30th day of March, 1950.

NED GILL BUILDING CORPORATION
By: (s) Ned Gill
President
Randolph & Butler
By: (s) Nowlin Randolph

GRAVES, Justice (dissenting).

This appeal is from a $33,591.37 judgment of the 61st District Court of Harris County, sitting with a jury, in favor of the appellees, Randolph and Butler, against the appellants, Ned Gill, an individual person, and Ned Gill Building Corporation, a private corporation, jointly and severally, in response to a jury's verdict on special issues of fact.

The suit was an action by the appellees, Randolph and Butler, attorneys, against the appellants, Ned Gill and Ned Gill Building Corporation, for attorneys' fees for alleged professional services rendered the latter by the former. The material issues of fact, as deemed by the court, were submitted in these two inquiries:

No. 1. "Do you find from a preponderance of the evidence that the defendant Ned Gill after the settlement of the suit styled Ned Gill Building Corporation v. Continental Oil Company agreed to pay plaintiffs a fee in the sum of $23,333.33 when defendant Ned Gill sold the stock of the Building Corporation?

"Answer 'Yes' or 'No'."

No. 2. "What sum of money, if any, do you find from a preponderance of the evidence to be a reasonable attorney's fee for legal services rendered by plaintiffs, Nowlin Randolph and William B. Butler, in the preparation, trial, and settlement of the suit styled Ned Gill Building Corporation v. Continental Oil Company?

"Answer giving the amount, if any, in dollars and cents."

The jury answered No. 1 "Yes", and No. 2 "$24,150.00."

There was a third issue propounded concerning the fees of appellees' attorney, which is not deemed material to the purpose of this opinion. The record conclusively shows that the court's judgment was not rendered on the answer to special issue No. 1, but was based upon that in response to issue No. 2, which the record shows had to do with the appellees' claimed cause of action against the corporation they had represented in the Federal Court suit; i. e., the Ned Gill Building Corporation, and clearly, if not necessarily, had no reference to the appellant, Ned Gill, personally, or in his individual capacity; in other words, this joint and several judgment so rendered here against both the Ned Gill Building Corporation and against Ned Gill personally, was unsupported in the record, and improper as to the latter.

Furthermore, there were no issues submitted or requested, as to whether or not the appellees performed their legal services "at the instance and request of Ned Gill in his individual capacity"; neither, in this member's opinion, could the judg-

ment against him· as such be based on any claim of theirs of an implied contract of a quantum meruit nature, since, as indicated, the appellees declared against the Ned Gill Building Corporation on its contract to pay them, which Ned Gill signed only in his official capacity as president of that corporation, and not as an individual. The rule of law on this subject is thus stated in 71 Corpus Jur. 83, § 42: "Where one has expressly contracted to pay, no obligation of another will be implied to pay for the services or materials furnished under the express contract." See also Heffron v. Pollard, 73 Tex. 96, 11 S.W. 165. Neither will it do, it is held, to assume that this Court's former holding in Gill v. Smith, Tex.Civ.App., 233 S.W.2d 223, 229, that the evidence in that case supported the claim of the appellee there that "Mr. Gill was an alter ego of the Building Corporation, and that the jury was authorized in finding that transactions between him and the Building Corporation were bookkeeping transactions, and that the jury was authorized by the evidence in answering special issue No. 1 in the affirmative." This, for the reason that no such issue of fact was either plead or proved in this present cause; wherefore, since the appellant, Ned Gill, individually in this present litigation, both in the trial court and in this Court on appeal, denies that the Ned Gill Building Corporation was his alter ego, the appellees here raise no question of fact to the contrary. There plainly is, therefore, no such issue of law before this Court.

Wherefore, the joint and several judgment so rendered against the appellants cannot stand. Since I am somewhat in doubt as to whether or not there should be a rendition, or a remand, I think this Court's order should be one returning the whole cause to the court below.

### On Filing of Remittitur

CODY, Justice.

Appellees have duly filed their remittitur herein in the sum of $925.37 as required by this Court's order entered May 27, 1954. Accordingly judgment will be entered reversing and rendering the judgment of the court below insofar as it allowed any recovery of and from the appellant Ned Gill Building Corporation, and as to appellant Ned Gill personally the judgment of the trial court will be reformed and affirmed so as to allow appellees a recovery of and from the said appellant personally the sum of $32,666, with interest thereon at the legal rate from the date of the trial court judgment. Costs of appeal will be adjudged against the appellees, and the trial court costs will be adjudged against the appellant Gill personally.

Reversed and rendered in part and in part reformed and affirmed, GRAVES, J., dissenting.